YOUNG, APPELLANT, *v.* FRANK'S NURSERY & CRAFTS, INC., APPELLEE.

[Cite as Young *v.* Frank's Nursery & Crafts, Inc. (1991), 58 Ohio St. 3d 242.]

(No. 90-412—Submitted January 23, 1991—Decided April 3, 1991.)

*Nathan & Roberts* and *H. Buswell Roberts, Jr.,* for appellant.

*Shumaker, Loop & Kendrick* and *Michael G. Sanderson,* for appellee.

WRIGHT, J. This is a case of first impression in Ohio, but the law under the Uniform Commercial Code is clear on the issue of a seller's remedies where the buyer commits an anticipatory breach.

The court of appeals correctly stated that the primary issue was which party had the burden of proving that the seller's decision to stop manufacture was commercially reasonable. The court erred, however, in its reliance upon *Detroit Power Screwdriver* v. *Ladney* (1970), 25 Mich. App. 478, 181 N.W. 2d 828, as authority for the proposition that the plaintiff had to prove that his decision to cease manufacturing was commercially reasonable.[1]

---

[1] The trial court applied the substantive law of Michigan, relying on Ohio choice-of-law rules, apparently because the contract was formed there, the appellee's principal place of business was there, and the appellant was a Michigan resident. However, burden of proof is governed by Ohio law. *Pennsylvania Co.* v. *McCann* (1896), 54 Ohio St. 10, 42 N.E. 768.

The better position is that where a buyer commits an anticipatory breach of a contract and the seller proceeds under UCC 2-704(2) (R.C. 1302.78[B]) and 2-708 (R.C. 1302.82)[2] for his remedy, the burden of proving that the seller acted in a commercially unreasonable fashion in deciding to cease manufacturing is on the buyer. UCC 2-704, Official Comment 2; 1 White & Summers, Uniform Commercial Code (3 Ed. 1988) 377, Section 7-15. The appellate court appears to have overlooked Mich. Comp. Laws Anno. ("M.C.L.A.") 440.2704 when it analyzed the argument of Frank's. That section deals with seller's rights and obligations regarding unidentified and incomplete goods, which is precisely the situation here.

At the time of the breach, in July 1987, Young had not begun to assemble the goods that he had contracted to sell to Frank's. M.C.L.A. 440.2703 (R.C. 1302.77), "Buyer's wrongful rejection, revocation of acceptance, or nonpayment: remedies of seller," lists the seller's principal remedies under the code. Because the goods in this instance were unidentified to the contract, M.C.L.A. 440.2703(c) directs the seller to the next section, M.C.L.A. 440.2704 (R.C. 1302.78), for his remedy. In turn, M.C.L.A. 440.2704 (2), provides:

"Where the goods are unfinished an aggrieved seller may in the exercise of reasonable commercial judgment for the purposes of avoiding loss and of effective realization either complete the manufacture and wholly identify the goods to the contract or *cease manufacture and* resell for scrap or salvage value or *proceed in any other reasonable manner.*" (Emphasis added.)

The theme of this section is mitigation. White & Summers, *supra,* at 377, in analyzing the import of this section, contends that the official comments to the UCC "* * * make clear that the burden is on the buyer to prove that the seller failed to use reasonable commercial judgment."

These respected commentators view the entire section as placing the burden on the breaching buyer:

"To read 2-704 as consistent with the general rules of mitigation, we would interpret it to mean that the seller must exercise commercially reasonable judgment not only when he decides to complete, but also when he decides not to. * * *

"* * *

"* * * Of course to preserve the usefulness of 2-704, the courts will have to be careful to place the burden on the buyer and to insist that he come forward with persuasive evidence that the seller acted in a commercially unreasonable way before they foreclose [the] seller from the right to complete or not complete. * * *" *Id.* at 379-380.

Mitigation is an affirmative defense in Ohio. *State, ex. rel. Martin,* v. *Columbus Dept. of Health* (1979), 58 Ohio St. 2d 261, 265, 12 O.O. 3d 268, 270, 389 N.E. 2d 1123, 1125. See, generally, Annotation, Presumption and burden of proof regarding mitigation of damages (1941), 134 A.L.R. 242. Thus, we must rule that the trial judge was correct in placing the burden on Frank's to show that Young's decision not to complete cutting all the evergreen boughs originally ordered was commercially unreasonable.

Next, Young would look to M.C.L.A. 440.2708 (R.C. 1302.82), "Nonacceptance or repudiation;

---

[2] Although Michigan code sections have been used because the trial court applied the substantive law of Michigan, the comparable sections of Ohio law are identical.

seller's damages," to determine the nature of his damages. The trial judge succinctly and clearly spelled out for the jury its responsibilities in this area,[3] apportioning the burden of proof between Young and Frank's as required by the UCC.

M.C.L.A. 440.2708(1) (R.C. 1302.82 [A]) provides for damages based on the contract price less the market price,

---

[3] The relevant portion of the trial judge's instructions reads:

"* * *

"Now, the person who claims that certain facts exist must prove them by a preponderance of the evidence. This duty is known as the burden of proof. The burden is on the Plaintiff to prove the facts necessary for its case by a preponderance of the evidence.

"Now, the Defendant in this case claims that the Plaintiff failed to mitigate his damages by not exercising reasonable commercial judgment. This is an affirmative defense which will be explained to you later in these instructions. The burden of proving an affirmative defense by a preponderance of the evidence is on the Defendant.

"* * *

"Now, with regards to the duty to mitigate damages and reasonable commercial judgment, you've heard those terms a lot in closing arguments. The law imposes on the injured party a duty to mitigate or minimize the damages he has suffered as a result of a breach of a contract. In this case the Defendant claims that the Plaintiff filed [sic] to mitigate or minimize his damages by not exercising reasonable commercial judgment following Defendant's breach of the contract in July of 1987. The defendant contends that the Plaintiff should have cut boughs and sold them in the fall of 1987, and that if he had done so, he would have fulfilled his duty to mitigate damages. The Plaintiff contends that he did exercise reasonable commercial judgment when he decided not to cut boughs and sell them following Defendant's breach of contract. Thus he contends that he did not fail to mitigate his damages.

"Now, thus in order to determine what damages, if any, that the Plaintiff is entitled to as a result of the Defendant's breach of the contract to purchase boughs, you must decide whether or not the Plaintiff exercised reasonable commercial judg-

ment when he did not cut and sell or attempt to sell the boughs listed on the February purchase order. In making this determination you must determine if there was a reasonably accessible market for the boughs at the time and place when they were to have been delivered to the Defendant. A market is not reasonably accessible if the market price for the boughs will not permit a seller to realize a reasonable profit from the sale of the boughs.

"If there was a reasonably accessible market, then the Plaintiff failed to exercise reasonable commercial judgment when he failed to cut the boughs and sell them in that market. On the other hand, if there was no reasonably accessible market, the Plaintiff exercised reasonable commercial judgment when he decided not to cut the boughs and sell them.

"Now, in determining the issue of whether the Plaintiff exercised reasonable commercial judgment you should consider only the facts and circumstances that existed at the time that Plaintiff learned of the Defendant's breach of the contract.

"The burden of proof is on the Defendant to establish that there was a reasonable [sic] accessible market for the boughs, and that Plaintiff therefore did not exercise reasonable commercial judgment when he failed to cut the boughs and sell them in that market. Now, the burden of proof with regards to all other disputed issues in this case is on the Plaintiff.

"Now, with regards to the measure of damages, once you have decided the issue of reasonable commercial judgment you must next decide which measure of damages to apply to the facts of this case. There are two possible measures of damages. Which one you apply is determined by your decision as to the issue of reasonable commercial judgment.

"The first measure of damages is the contract price minus the market price. If you find that the Plaintiff did not exercise

unless such a remedy falls short of putting the seller in as good a position as performance would have done. Here, the plaintiff had determined in July that there would be no market available for his boughs in the fall. The judge instructed the jury that if it believed that decision was not commercially reasonable, to award the plaintiff the difference between what he could have sold the boughs for — the market price — and the unpaid contract price. If the jury believed that Young had failed to mitigate his damages, this remedy would have taken that into account by awarding him no more, in theory, than he would have made by cutting the boughs and selling the portion Frank's did not want to other buyers.

M.C.L.A. 440.2708(2) (R.C. 1302.82[B]) was offered by the trial judge as an alternate measure if the jury found that Young's decision not to cut the boughs was appropriate. In that case, the jury would have had to conclude that there was no market, as Young contended, and therefore, according to the statute, he should receive the profits that he would have made had there been full performance by the buyer.

Logic and equity, as well as the law, sustain the jury's verdict. Therefore, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

---

reasonable commercial judgment when he did not cut and sell or attempt to sell all the boughs listed on the February purchase order, then the measure of damages for the Defendant's breach of that contract is the difference between the market price at the time and place for delivery and the unpaid contract price called for in the purchase order. In addition, Plaintiff is entitled to any incidental damages, but less expenses Plaintiff saved as a result of the Defendant's breach of the contract.

"The second possible measure of damages is loss of profits. If you find that Plaintiff did exercise reasonable commercial judgment when he decided not to cut and sell the remainder of the boughs listed on the February purchase order, then the measure of damage for the Defendant's breach of that contract is the profit, including reasonable overhead, which the Plaintiff would have made from full performance of the contract by the Defendant plus any incidental damages.

"In determining lost profits you should subtract variable costs from the contract price. A variable cost is one that varies as the activity of producing boughs varies."