OPINION
Plaintiff, Tatyana Zunshine, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant, Wallace F. Ackley Company. Finding no merit to plaintiff's appeal, we affirm.
On February 3, 1996, plaintiff entered into a written agreement with defendant to lease an apartment located at 4461 Masters Drive, Columbus, Ohio. Pursuant to paragraph 2 of the lease, plaintiff tendered a security deposit of $725 upon execution of the lease.
The lease was automatically renewable from year to year. Paragraph 7 of the lease states as follows:
 7. AUTOMATIC LEASE RENEWAL: Unless written notice is given in the rental office by Lessee to Lessor or Lessor to Lessee thirty (30) days prior to the expiration of this Lease of intent of giving up this Lease, then the Lease shall automatically renew itself, from year to year, under the Lease terms and conditions with the exception of any rent changes made under Section 8 of this Lease. If the Lessee holds over beyond the term of this Lease, he shall be a tenant from year to year under the terms and conditions of this Lease, but subject to any rent increases provided in paragraph 8, and such holding over shall not be considered as a tenancy from month to month.
The initial term of the lease ran from March 1, 1996 through February 28, 1997. Thereafter, pursuant to paragraph 7, the lease automatically renewed for second and third one-year terms effective March 1, 1997 and March 1, 1998, respectively.
The lease provided for the payment of rent and rent increases as follows:
 3. RENT: Eight Thousand Seven Hundred and 00/100 Dollars ($8,700.00) total sum during said term, payable in monthly installments of Seven Hundred Twenty Five and 00/100 — Dollars ($725.00) each month, in advance on the 1st day of each month during the term of the Lease.
* * *
 8. RENT INCREASE AND MODIFICATION: Lessor may revise the rent charged on the premises or modify the Lease during succeeding terms of this Lease by giving at least sixty (60) days notice of such change * * * [.]
Although the lease agreement was signed by both plaintiff and defendant, it was not signed in the presence of two witnesses and was not acknowledged by a notary public or other officer.
Pursuant to paragraph 8 of the lease, defendant notified plaintiff by letter dated March 31, 1997, that beginning June 1, 1997, the rent would increase from $725 to $735 per month. The letter stated, in pertinent part:
 Effective with your June 1, 1997 rent payment, your monthly rent will increase from $725.00 to $735.00.
 The above modification is consistent with the terms of your Lease and should be considered a part of your Lease. Please attach this letter to your Lease as an Addendum.
By letter dated March 3, 1998, plaintiff informed defendant that she was moving out of the apartment sometime before May 1, 1998, and that she considered herself responsible for paying rent only through the end of April 1998. By letter dated March 20, 1998, plaintiff informed defendant that defendant had "permission to * * * rerent [sic] an apartment on 4461 Masters Dr., which I will be vacating on April 24, 1998." On April 22, 1998, plaintiff verbally requested that defendant release her from further obligation regarding the rent. On April 23, 1998, plaintiff paid the April rent, including a late fee. At that time, defendant informed plaintiff that, pursuant to the terms of the lease, she was responsible for rent payments for the balance of the lease term until such time as defendant acquired a new tenant for the premises. Plaintiff vacated the property in late April 1998. Defendant re-rented the premises effective June 1, 1998.
On May 12, 1998, defendant forwarded the disposition of the security deposit to plaintiff. Defendant itemized deductions from the $725 security deposit as follows:
 May, 1998 Rent $735.00 Advertising $184.86
 -Dispatch 4/12/98 $27.66 -SNP 4/1-5/6/98 6 weeks @ 26.20 = $157.20
 Trash clean out (attic, 1/2 bath vanity) $ 27.60
Total Charges $947.46 Less Damage Deposit Withheld $725.00
 Amount Due the Wallace F. Ackley Co. $222.46
Defendant requested that plaintiff pay the $222.46 balance.
On May 14, 1998, plaintiff filed the instant action seeking a declaration that the lease was defectively executed in that it failed to conform to R.C. 5301.01[1] and that the purported lease created only a month-to-month tenancy. Accordingly, plaintiff requested that the court (1) order defendant to return the security deposit, and (2) award her costs and reasonable attorney fees. Defendant filed an answer and counterclaim, asserting that plaintiff had breached the lease by abandoning the premises during the lease term. Defendant demanded judgment in the amount of $222.46, plus interest, costs and attorney fees. In her reply to defendant's counterclaim, plaintiff asserted as an affirmative defense defendant's alleged failure to mitigate damages.
On June 26, 1998, defendant filed a motion for summary judgment. Defendant did not dispute plaintiff's contention that the lease agreement failed to comply with R.C. 5301.01 and thus was defectively executed. However, defendant argued that because the lease agreement provided for annual rent payable in monthly installments, a year-to-year tenancy was created, thus obligating plaintiff for the balance of the rent payable for the lease term until defendant re-rented the premises on June 1, 1998.
On July 10, 1998, plaintiff filed a cross-motion for summary judgment and on September 28, 1998, she filed a memorandum contra defendant's motion for summary judgment. In both documents, plaintiff argued that the March 31, 1997 addendum to the lease agreement converted the lease to a month-to-month, rather than a year-to-year tenancy, because the addendum provided for monthly, rather than annual payment of rent. Accordingly, plaintiff asserted that because she was not responsible for either the rent or costs incurred in re-renting the premises after she moved out in April, defendant wrongfully withheld the $725 security deposit and wrongfully assessed against her advertising expenses of $184.86. In her memorandum contra, plaintiff argued, alternatively, that if the court found her liable for the May 1998 rent, she should not have to pay it because defendant failed to mitigate its damages.
In a decision filed April 19, 1999, the trial court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment. Specifically, the court found that the March 31, 1997 addendum to the lease pertained solely to a change in the amount of the monthly installment payments and did not act to change the duration of the lease term from year-to-year to month-to-month. Accordingly, the trial court held, as a matter of law, that when plaintiff vacated the premises in late April 1998, she remained liable for monthly installment payments for the remainder of the year-long lease; thus, defendant was entitled to withhold plaintiff's security deposit as payment of rent for the month it took defendant to obtain a new tenant, as well as for expenses associated with re-renting the premises. The trial court did not, however, address plaintiff's mitigation claim.
Consistent with its decision, the trial court, in a journal entry filed April 28, 1999, dismissed plaintiff's complaint and granted judgment to defendant on its counterclaim in the amount of $222.46 plus interest at the rate of ten percent per annum from the date of judgment. Plaintiff now appeals, raising a single assignment of error:
 The trial court erred to the prejudice of Appellant when it granted Appellee's motion for summary judgment and denied Appellant's motion for summary judgment.
By her assignment of error, plaintiff contends that the trial court erred in granting summary judgment in favor of defendant. Specifically, plaintiff contends that the trial court erred in finding that the defectively executed lease created a year-to-year tenancy rather than a month-to-month tenancy. Plaintiff also contends that the trial court erred in not addressing her claim that defendant failed to mitigate its damages.
Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C);Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621,629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 65-66.
"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record *** which demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,292. Once the moving party meets its initial burden, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial. Id.
In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that applied by the trial court. Maust v. Bank One Columbus, N.A.
(1992), 83 Ohio App.3d 103, 107. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment is a procedural device to termination litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
Neither party disputes the trial court's finding that the lease agreement at issue was invalid, having failed to comply with the attestation and acknowledgement requirements of R.C.5301.01. Once a trial court determines that a lease is invalid, it must then determine the terms of the resulting tenancy.
The law with regard to the determination of the terms of a tenancy resulting from a defectively executed lease is set forth in Ruben v. S. M. N. Corp. (1993), 83 Ohio App.3d 80, 83:
 "*** [I]t is well settled that where a purported lessee takes possession under a defectively executed lease and pays rent, a tenancy will be implied and is subject to all of the terms of the purported lease except duration. See Baltimore Ohio Railroad Co. v. West (1897), 57 Ohio St. 161 [49 N.E. 344]. The duration of the term is determinable by the provisions for payment of rent, so a lease providing for annual rent creates a tenancy from year to year, whereas a lease providing for monthly rent creates a tenancy from month to month. See Wineburgh v. Toledo Corp. [(1932)], 125 Ohio St. [219] at 222 [181 N.E. 20 at 21]. A year-to-year tenancy will be implied where the rent is reserved annually, although payable in monthly installments. See Baltimore Ohio Railroad, supra, [57 Ohio St.], at 165 [49 N.E. at 344]; Kallins v. Rex, Inc. (1955), 103 Ohio App. 108 [71 Ohio Law Abs 525, 3 O.O.2d 178, 125 N.E.2d 371].
Plaintiff concedes that in the first year, the lease agreement created a year-to-year tenancy, as it provided for annual rent payable in monthly installments. However, plaintiff argues that the March 31, 1997 addendum to the lease modified the lease agreement from annual rental payable in monthly installments to monthly rent, thereby creating a month-to-month tenancy. We disagree.
The instant case is similar to Cesta v. Manfredi (1995),101 Ohio App.3d 326. In Cesta, the tenant entered into a five-year lease agreement for the lease of commercial property. The lease agreement was signed by the tenant, landlord and two witnesses, but was neither acknowledged nor recorded. The lease agreement contained a provision for an annual rental of $8,400 for the first year, payable in monthly installments of $700. The rent provision further stated that at the end of the first year and each subsequent year thereafter, the rent would be increased by a percentage equal to the increase in the consumer price index for the preceding twelve-month period. The tenant breached the lease in the second year. The tenant claimed that because the lease did not comply with R.C. 5301.01, a month-to-month tenancy was created. Specifically, the tenant argued that the language of the lease agreement did not create five annual terms as to the payment of rent, but instead created an annual term for the first year and then divided the final four years into monthly payment terms. The court rejected the tenant's argument:
 In the case sub judice, it is clear that under the first paragraph of the rent provision, the purported lease expressly provides for an annual rental of $8,400 for the first year, payable in monthly installments of $700. We find that it is equally clear that when this paragraph is read in context with the following paragraphs, the lease also provides for an annual rent for the remaining four years. The percentage increase equal to the increase in the Consumer Price Index added to each subsequent year did not change the rental terms, but accounted for anticipated inflationary adjustments. Thus, pursuant to Baltimore Ohio RR. Co. and Wineburgh, the lease at issue here created a year-to-year tenancy since it provided for an annual rent. * * * [Id. at 329.]
Similarly, the rent provision in paragraph 3 of the purported lease agreement sub judice expressly provides for an annual rental of $8,700 for the first year, payable in monthly installments of $725. Paragraph 8 of the lease agreement provides for increases in rent during succeeding terms of the lease. As in Cesta, we find that when paragraph 3 is read in context with paragraph 8, the lease provides for annual rent for succeeding terms of the lease. Thus, it is clear that the March 31, 1997 letter, written pursuant to paragraph 8 of the lease, pertains only to the amount of the monthly installments and does not serve to alter the lease as to the provision providing for annual rent. Indeed, the March 31, 1997 letter clearly states that the rent modification is "consistent with the terms of [the] Lease and should be considered a part of [the] Lease."
Our conclusion is bolstered by the unopposed affidavit of Bruce D. Yuhas, defendant's property manager, in which he attests that "[t]he March 31, 1997 letter increasing the rent was never intended to change the term of the lease from year to year to month to month and the plaintiff understood that." Yuhas further states that defendant "uses year to year renewals on its leases so that it can keep the rents lower. The Lease with the Plaintiff was never modified to a month to month rental."
Plaintiff's continued possession of the premises after the lease was automatically renewed on March 1, 1998 created a year-long tenancy. Thus, when she vacated the premises in April 1998, she remained liable for the $735 monthly installment payment for the remainder of her lease. Because defendant rented the premises effective June 1, 1998; however, plaintiff was only liable for payment of the May 1998 rent. Further, pursuant to paragraphs 2 and 19 of the lease, plaintiff was responsible for expenses (such as cleaning and advertising) associated with re-renting the premises.
Plaintiff next argues that the trial court erred in failing to consider her argument that defendant did not make a reasonable effort to mitigate its damages. Specifically, plaintiff maintains that had defendant not sought a significantly higher rent ($795) and not procrastinated in re-renting the premises, defendant "could have re-rented the apartment much sooner and would not have held Appellant responsible for May 1998 rent."
When a tenant vacates rental property prior to the expiration of the lease term, the landlord has a duty to secure a new tenant in order to mitigate damages. Hines v. Riley (1998),129 Ohio App.3d 379, 383. It is well-established that the failure to mitigate damages is an affirmative defense. Young v. Frank'sNursery Crafts, Inc. (1991), 58 Ohio St.3d 242, 244. Thus, the burden is on the tenant to prove that the landlord failed to mitigate damages. Hines, supra.
A landlord must make reasonable efforts to mitigate damages sustained by the tenant's breach of the lease. MasterLease of Ohio v. Andrews (1984), 20 Ohio App.3d 217, 220. The term "reasonable efforts" does not require a landlord to make extraordinary efforts to find a new tenant or attempt the unreasonable or impracticable. Foust v. Valleybrook Realty Co.
(1981), 4 Ohio App.3d 164, 168; Endersby v. Schneppe (1994),73 Ohio App.3d 212.
In the present case, a review of the record demonstrates that defendant did, in fact, take reasonable steps to mitigate its damages. Defendant listed the property on March 20, 1998, only two weeks after plaintiff advised defendant of her intention to vacate the premises. The listing ran continuously through early May 1998, when a new tenant signed a lease. The new tenant moved in on June 1, 1998. Further, plaintiff presented no evidence that the increase in rent delayed the re-renting of the premises.
As the record demonstrates that defendant is entitled to judgment as a matter of law on its counterclaim and that no genuine issue of material fact exists as to plaintiff's mitigation claim, summary judgment was appropriate. Accordingly, plaintiff's assignment of error is not well-taken.
For the foregoing reasons, plaintiff's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
LAZARUS and KENNEDY, JJ., concur.
[1] A lease for a term in excess of three years must comply with the requirements of R.C. 5301.01. R.C. 5301.08. A one-year lease which provides for automatic extensions is a lease for more than three years for purposes of R.C. 5301.01 and 5301.08. SeeBarclay Petroleum, Inc. v. Perry (May 31, 1990), Muskingum App. No. CA-89-7, unreported. R.C. 5301.01 provides, in relevant part, as follows: "A * * * lease of any interest in real property *** shall be signed by the * * * lessor * * * [.] The signing shall be acknowledged by the * * * lessor * * * in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. The signing shall be acknowledged by the *** lessor * * * before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe his name to the certificate of the acknowledgment."