OPINION
{¶ 1} Defendants-appellants Alexander Walsh, Debbie Frakes, Steve Clegg, Maggie Moore, Diamond Home Services, Inc., and Globe Building Materials, Inc. appeal the April 16, 2002 Judgment Entry of the Stark County Court of Common Pleas which, after a trial to the court, found in favor plaintiff-appellee Danner Press Corp. against appellees on three accounts in the amount of $84,691.21 at 18% per annum from March 1, 2000 until satisfied.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On May 19, 2000, appellee commenced this action seeking recovery of amounts owed on various accounts for publishing services. In each instance, appellant agreed to publish certain materials for Frakes, and/or Clegg and/or their business ventures. Although the defendants attempted to satisfy the outstanding debts to appellee, they were ultimately unable to do so.
 {¶ 3} On March 18, 2002, the trial court conducted a bench trial. The accounts at issue during the trial were all initiated by Frakes, Clegg, a business either Frakes or Clegg owned, or a corporation with which Frakes or Clegg was affiliated. In an attempt to clarify the relationships, we address the individual accounts.
Maggie Moore/Catalog Holdings, Inc. Account
 {¶ 4} In 1993, Debbie Frakes and Steven Clegg formed and operated the business known as Catalog Holdings, Inc. (hereinafter "Catalog Holdings"). Catalog Holdings was incorporated in the State of New York. Catalog Holdings did business as Maggie Moore. The purpose of Maggie Moore was to sell childrens' clothing through a catalog.
 {¶ 5} In 1993, Maggie Moore contacted appellee to have catalogs printed. This was the first contact between Frakes and Clegg and appellee. Appellee entered into an agreement with Catalog Holdings to publish a catalog for the Maggie Moore Catalog Store. Appellee agreed to extend credit to Catalog Holdings based upon the personal guarantee signed by Frakes and Clegg. The personal guarantee stated:
 {¶ 6} "To induce Standard Press ("Printer"), to print Maggie Moore Catalog and any other publications for Catalog Holdings, Inc. ("Publisher") from time to time, * * * Deborah Frakes and C. Stephen Clegg of 5525 Independence Avenue, Bronx, New York ("Guarantor"), hereby guarantees to Printer the prompt and unconditional performance of any and every obligation or liability of Publisher to Printer, including but not limited to, payment of all money due together with late charges, disbursements, expenses and deficiencies."
 {¶ 7} The guarantee further provided:
 {¶ 8} "This is a continuing guarantee and shall remain in force and effect until revoked by the Guarantor in writing and a copy thereof duly served upon the Printer, but revocation shall not affect any outstanding obligation or printing order undertaken or commenced prior to receipt of notice of revocation by Printer."
 {¶ 9} In reliance upon this personal guarantee, appellee began printing catalogs for Maggie Moore. In fact, appellee published two sets of catalogs for Maggie Moore. Within a relatively short period of time, Maggie Moore failed and ceased doing business, leaving a balance owed to appellee of over $176,000. After the failure of Maggie Moore, and pursuant to the personal guarantee, appellee looked to Clegg and Frakes to satisfy amounts owed on the account.
 {¶ 10} Because Clegg and Frakes could not immediately pay the balance, the parties made a number of different arrangements to satisfy the account. These efforts included making quarterly payments of $25,000, and then monthly payments of $5,000 which worked until 1996. After that time, appellee agreed to credit the Maggie Moore account with premiums tacked onto business referred by appellants to appellee. Under this agreement, appellee added a 10% premium at the time of quoting jobs referred by appellants. If the quotes were competitive and accepted, the 10% premium would be applied as a credit to the Maggie Moore account.
 {¶ 11} Over time, appellants referred business to appellee. Appellee credited appellants' account under the arrangement. At the time of the filing of the suit, appellee alleged the balance outstanding on the account was $28,948.34. In its complaint, appellee also sought interest from March 1, 2002.
Globe Building Materials/Alexander Walsh
 {¶ 12} In 1989, Globe Building Materials (hereinafter "Globe") was incorporated. Globe manufactured roofing materials, primarily shingles and rolled goods for the roofing industry. Globe employed approximately 400 employees in three plants, a paper mill, and two shingle plants. Steve Clegg was the chairman and CEO of Globe for a period of time. However, all business decisions of Globe were made by a board of directors, after approval at regular board meetings.
 {¶ 13} In 1995, Frakes formed Alexander Walsh, a marketing firm providing a full range of services including research and development of sales programs, and contact programs. Alexander 
Walsh's primary client was Globe.
 {¶ 14} 1995, Alexander Walsh entered into an agreement whereby Alexander Walsh would develop brochures for Globe. Ultimately, Globe requested Alexander Walsh to create and have a catalog published. Alexander Walsh contracted appellee to complete the publishing of a catalog for Globe. The invoice for this service was in the amount of $22,310.67. However, neither Alexander Walsh nor Globe ever paid this invoice. Subsequently, Globe filed Chapter 7 bankruptcy and is in liquidation.
Diamond Home Services/Alexander Walsh
 {¶ 15} Diamond Home Services (hereinafter "Diamond") was incorporated in 1995. Diamond is a holding company traded on NASDAQ. Diamond contracted with Alexander Walsh for the printing of various catalogs for its business. In November 1999, Alexander Walsh obtained an initial quote from appellee to reprint four catalogs for Diamond. The quote for the reprint of four catalogs was assigned quote number 1064. After agreeing to terms, but before the printing, Frakes asked appellee to reduce the costs of the Diamond quote to make it more competitive. Because appellee had already built in a 10% premium to credit the Maggie Moore balance, it agreed to lower the cost by 5%. In the process of lowering the quote, appellee internally changed the quote number from 1064 to 1064A.
 {¶ 16} Appellee sent the new quote to Alexander Walsh, forwarded the proofs showing the requested changes to the fourth catalog, and proposed a printing schedule. An employee of Alexander Walsh reviewed the revisions and responded in writing with the proposed printing schedule. This writing instructed appellee to begin printing.
 {¶ 17} After printing the catalogs and binding all but one, Frakes called appellee and stopped the remaining work. There were never any contracts between appellee and Diamond and/or Globe. Rather, the contracts for work were between appellee and Alexander Walsh. Alexander Walsh never paid for the Globe or Diamond catalogs, leaving a total balance due of $84,691.21.
 {¶ 18} After hearing all the evidence, the trial court found that but for the personal guarantee, appellee would not have extended credit to Catalog Holdings to publish the Maggie Moore catalog. Further, the trial court found appellee viewed Catalog Holdings as the supreme legal entity to any other company involved with Clegg and Frakes, including Maggie Moore, Globe, Diamond, and Alexander Walsh. The trial court further found Alexander Walsh was formed primarily to publish Globe and Diamond catalogs and that the financial beneficiary of these accounts was Frakes.
 {¶ 19} All relevant times, a company called Catalog Holdings was associated with Diamond and Globe in that it took customer responses to solicitations and then directed them to either Diamond or Globe. As part of this process, Catalog Holdings fielded telephone calls and provided catalogs.
 {¶ 20} At trial, appellants maintained the Catalog Holdings corporation performing this function was a separate corporation from the Catalog Holdings associated with Maggie Moore. Appellants argued the Catalog Holdings in New York, and which dealt exclusively with Maggie Moore was dissolved. Appellants then incorporated a New Catalog Holdings, Inc. in Delaware. Appellant maintained the Delaware corporation handled business with the Globe and Diamond. Appellants presented the trial court with no documentary evidence to support these assertions. In fact, the trial court found Clegg's testimony, both at trial and in his deposition, "to be vague, circular, and evasive on this issue." Judgment Entry Findings of Fact at 6.
 {¶ 21} After hearing the evidence, the trial court found in favor of appellee and against Alexander Walsh, Frakes and/or Clegg, jointly and severally on the account identified as Globe and Diamond in the amount of $84,691.21 at 18% per annum, to accrue from March 1, 2000, until satisfied. Further, the trial court found in favor of appellee against Catalog Holdings, Inc., Frakes and Clegg, jointly and severally on the account identified as Maggie Moore in the amount of $28,948.34 at 10% per annum from March 1, 2002, until its satisfaction. Appellants appeal the April 16, 2002 Judgment Entry, assigning the following errors for our review:
 {¶ 22} "I. The trial court erred, as a matter of law, in entering judgment in favor of plaintiff Danner Press against defendant Alexander Walsh on an alleged contract for catalogs printed for Diamond Home Services, Inc. based upon the absence of any written contract between the parties.
 {¶ 23} "II. The trial court erred, as a matter of law, in enforcing a personal guaranty in favor of Danner Press against defendants Debbie Frakes and Steve Clegg on amounts allegedly owed by Alexander Walsh for catalogs printed for Diamond Home Exteriors and Globe Building Materials, based upon the express terms of the written guaranty and the limited scope of that guarantee.
 {¶ 24} "III. The trial court erred, as a matter of law, in its calculation of the damages owed on an alleged contract."
 I. {¶ 25} In appellants' first assignment of error, they maintain appellee has failed to establish a valid contract existed between appellee and Alexander Walsh at the time appellee printed catalogs for Diamond. Therefore, appellants maintain appellee is not entitled to any damages with regard to that account. Appellants concede there was a contract for one catalog, but maintain there was not a contract for four catalogs. We agree with the trial court there was more than sufficient evidence to establish a contract existed for all four catalogs.
 {¶ 26} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 27} At trial, appellee introduced its work order number 1064. This exhibit, which provided a quote for all four catalogs, contains the signature of a responsible party for Alexander Walsh. However, after agreeing to the terms contained therein, Alexander Walsh asked for a lower price. Thereafter, appellee created quote number 1064A which was then accepted by an authorized representative of Alexander Walsh as demonstrated in trial exhibit 27.
 {¶ 28} Appellee notes the reason many of the trial exhibits referenced only the roof catalog was because appellee had previously printed all four catalogs. Alexander Walsh was contracting with appellee to print them a second time. However, on the second printing, Alexander Walsh wanted changes made in just one of the four catalogs, the roof catalog. The changes in the roof catalog required proofing by appellants which was referenced in many of the trial exhibits. At trial, Clegg, Frakes, and Alexander Walsh claimed only one catalog was to be printed.
 {¶ 29} Trial exhibit 3 demonstrated Alexander Walsh's signature on a contract agreeing to have all four catalogs printed. Appellee then voluntarily agreed to lower the price of the quote and create a new quote number. Further, the trial court heard testimony from Jim Suggs, a senior customer services account representative with appellee. Mr. Suggs testified he was the representative for the Alexander Walsh account and further testified that Jill Peterson, the representative from Alexander Walsh, ordered and authorized the printing of all four catalogs. Further, on February 1, 2000, Frakes called appellee and asked them to stop printing all four catalogs. We agree with appellee this suggests Frakes was well aware Alexander Walsh had agreed to the terms and requested printing of all four catalogs.
 {¶ 30} There was also circumstantial, post-printing confirmation Frakes agreed to the terms to print four catalogs. In e-mail messages Frakes sent to appellee, she never questioned the authority of appellee to have printed all four catalogs. Further, Frakes retained legal counsel for Alexander Walsh to seek repayment of all four catalogs from Sears, the contractor with whom Globe and Diamond had contracted and the company for whom the catalogs were being prepared.
 {¶ 31} Further, Alexander Walsh was provided with a written printing schedule in advance of printing all four catalogs. In fact, it was trial exhibit 28, the printing schedule of the four catalogs, which prompted Peterson to send trial exhibit 27, the instructions to proceed with printing all four catalogs including the approved changes of the roof catalog. Accordingly, we cannot find the trial court's decision was against the manifest weight of the evidence.
 {¶ 32} Appellant's first assignment of error is overruled.
 II. {¶ 33} In their second assignment of error, appellants maintain the trial court erred in finding Frakes Clegg were responsible under the personal guaranty for the contracts between appellee and Alexander Walsh relative to Globe and Diamond accounts. We agree.
 {¶ 34} As clearly set forth in the contract of guarantee, to induce appellee to print the Maggie Moore catalog, and any other publication for Catalog Holdings, the parties gave their personal guarantee. In its April 16, 20002 Judgment Entry, the trial court found that appellee viewed Catalog Holdings as the supreme legal entity to any other company involved with Catalog Holdings, and that Catalog Holdings was the parent or the controlling company to Maggie Moore, Globe, Diamond, and Alexander Walsh. However, there is nothing to support the finding that Catalog Holdings of New York and/or Catalog Holdings of Delaware was in any way involved with the Alexander Walsh accounts of Diamond and Globe.
 {¶ 35} Alexander Walsh was incorporated and was a separate entity notwithstanding the fact that it was initially set up and run by Frakes. We realize the fact Alexander Walsh's major clients were companies run by Clegg which caused further confusion. Notwithstanding the obvious personal relationships involved, Alexander Walsh was not legally related or affiliated with Maggie Moore Catalog and/or any other publication for Catalog Holdings. Accordingly, we find the trial court erred in applying the contract of guarantee executed in 1993 to the contract between appellee and Alexander Walsh as it related to the Globe and Diamond accounts.
 {¶ 36} Appellants' second assignment of error is sustained.
 III. {¶ 37} In appellants' third assignment of error, it maintains the trial court erred in awarding damages. Specifically, appellant contends that even if the amounts are due and owing from Alexander Walsh for the Globe and Diamond catalogs, the amounts in the invoices should be reduced not only by the salvage value of the catalogs in appellee's possession, but also by the cost of the premiums included in those invoices. We disagree.
 {¶ 38} In Ohio, mitigation is an affirmative defense. Young v.Franks Nursery Crafts, Inc. (1991), 58 Ohio St.3d 242, 244. The Ohio Supreme Court in Jim's Steakhouse, Inc. v. Cleveland (1998),81 Ohio St.3d 18, provides for waiver of a an affirmative defense if it is not raised in a pleading or an amended pleading. See Civ.R.8. Because appellants did not assert failure to mitigate as an affirmative defense in the pleadings, we find appellants have waived this issue pursuant to Civ.R. 8(C).
 {¶ 39} Appellants also now contend they are entitled to a 5% premium credit on the Maggie Moore account from the work billed to Alexander Walsh. While we find appellants' argument may have merit, we find appellants' have also waived this defense. This issue was also not raised as an affirmative defense in the pleadings. Further, appellants stipulated to the damages at trial, failed to argue this issue in their proposed findings of fact and conclusions of law, and failed to present any testimony or evidence demonstrating an alternative damage amount. We find appellants have waived the issue for review.
 {¶ 40} Appellant's third assignment of error is overruled.
 {¶ 41} The April 16, 2002 Judgment Entry of the Stark County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings consistent our opinion and law.
By: Hoffman, P.J., Farmer, J. and Wise, J. concur.
topic: 1. MWE contract 2. Personal Guaranty Contract 3. Damages, affirmative defenses no timely raised.