[Cite as *Colbur Tech, L.L.C. v. Zerco Sys. Internatl., Inc.*, 2010-Ohio-4318.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| COLBUR TECH, LLC, | ) | |
| | ) | CASE NO.   09 MA 70 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| ZERCO SYSTEMS | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court,
                             Case No. 06CV3463.


JUDGMENT:                    Affirmed.


APPEARANCES:
For Plaintiff-Appellee:       Attorney Timothy Rudge
                             6550 Seville Drive, Suite B
                             Canfield, Ohio  44406


For Defendant-Appellant:      Attorney Albert Palombaro
                             1032 Boardman-Canfield Road
                             Youngstown, Ohio  44512


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Frank D. Celebrezze, Jr., Judge of the Eighth District
      Court of Appeals, Sitting by Assignment.


                             Dated:  September 10, 2010

VUKOVICH, P.J.

¶{1} Defendant-appellant Zerco Systems International, Inc. appeals the decision of the Mahoning County Common Pleas Court, which entered judgment in favor of plaintiff-appellee Colbur Tech, LLC in the amount of $338,491.84. This case involves the terms of a commercial lease and the remedies for unpaid rent thereunder. Zerco maintains that it was liable for unpaid rent only up to the date of Colbur's letter terminating the lease. Thus, Zerco argues that the trial court erroneously held that it remained liable for lost rent for the remainder of the three-year lease term. For the following reasons, these arguments are without merit, and the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

¶{2} Samuel Boak and Mark Gervelis are equal owners of Colbur. The president of Zerco, John Soltesz, decided to rent a building owned by Colbur at 6550 Seville Drive in Canfield, Ohio. Although the building was move-in ready, Mr. Soltesz expressed a desire to make some changes to the interior of the building. (Tr. 31). In April of 2004, Colbur allowed Zerco to begin making renovations. (Tr. 35). The parties then entered two three-year leases, starting on June 1, 2001: one for the top floor at a rate of $73,325 per year payable in monthly installments of $6,110, and one for the first floor and basement at a rate of $68,750 per year payable in monthly installments of $5,729.

¶{3} Zerco made two payments of $6,210 each on May 3 and June 1, 2001. After no further payments were received, Colbur sent Zerco a letter dated January 25, 2002, advising that the leases were terminated for the failure to pay rent and for damage to the premises among other things. Apparently, Zerco had "demoed" the first floor of the building but had not completed the planned renovation and thus had not moved its headquarters into the premises yet. (Tr. 31, 35-37). According to Mr. Boak, he could not relet the building without putting a considerable amount into repairs such as drywall, paint, and carpet. (Tr. 64-65). However, throughout 2002, Mr. Soltesz continued to bring investors into the building stating that he was in the process of purchasing it. (Tr. 34, 64).

¶{4} At the end of 2004 and the beginning of 2005, Zerco paid Colbur $11,500 toward the rent. (Pl. Ex. 3, drafted by Zerco). Through 2005 and part of

2006, Zerco spent $43,813.16 on improvements to the building. Id. Zerco also provided $20,000 in stock to Colbur. (Tr. 32).

¶{5} On September 5, 2006, Colbur filed a breach of contract complaint against Zerco regarding the two leases. Admissions regarding the fact of the breach were entered against Zerco. On January 24, 2008, partial summary judgment was granted to Colbur with a finding that Zerco breached both leases. The damage hearing proceeded before a magistrate on October 29, 2008. Mr. Boak was the only witness.

¶{6} Zerco's trial brief argued that it was only liable for $94,712 (minus any setoffs such as the two rental payments received in 2001 and the stock provided), which sum represented the eight months of rent from June 1, 2001 until the termination letter of January 25, 2002. Zerco urged that upon termination, their obligation to pay rent for the remainder of the three-year lease ceased.

¶{7} On February 3, 2009, the magistrate ruled that the leases contained no language limiting Colbur's remedies and thus the choosing of one remedy (termination) did not eliminate the ability to choose another remedy (lost rent for the unfulfilled lease term after termination) as well. The magistrate thus held that the termination letter did not relieve Zerco of its obligation to pay rent. The magistrate found that the condition in which Zerco left the building made it difficult to relet. The magistrate also noted that Zerco continued to pay rent, met people at the building, and made renovations even after the termination letter. The magistrate thus alternatively likened the situation to that of a holdover tenant.

¶{8} The magistrate concluded that Colbur was entitled to all rent due for the three-year terms of the contracts, which called for $426,255. The magistrate then credited Zerco with $87,733.16 (for rent paid in 2001, 2004, and 2005; for the stock; and for the 2005-2006 renovations). This left a judgment in favor of Colbur in the amount of $338,491.84 plus interest from May 1, 2004.

¶{9} On February 19, 2009, Zerco sought an extension of time to determine whether a motion for a new trial could be filed under Civ.R. 59. This motion was not ruled upon. On February 23, 2009, Zerco filed its objections to the magistrate's decision. On March 18, 2009, the trial court adopted the magistrate's decision and entered judgment in favor Colbur as decided by the magistrate. Zerco filed a timely appeal to this court.

## FAILURE TO PROVIDE TRANSCRIPT TO TRIAL COURT

¶{10} Pursuant to Civ.R. 53(D)(3)(b)(iii), an objection to a factual finding, whether or not specifically designated as such, shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. Where the objecting party fails to provide the trial court with the transcript of the proceedings before the magistrate, the appellate court is precluded from considering the transcript of the magistrate's hearing. *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 730; *Livingston v. Graham*, 7th Dist. No. 09JE16, 2010-Ohio-1091, ¶14-15 (where the transcript is not provided to the trial court, both the trial court and the appellate court are bound by the magistrate's factual findings); *Petty v. Equitable Prod. & Eastern States Oil & Gas, Inc.*, 7th Dist. No. 05MA80, 2006-Ohio-887, ¶19, 22. See, also, *State v. Ishmail* (1978), 54 Ohio St.2d 402, ¶1 ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.").

¶{11} Zerco's objection to the magistrate's decision was not accompanied by a transcript or an affidavit of evidence. As such, Zerco cannot rely on the transcript from the magistrate's hearing presented to this court to make appellate arguments concerning the sufficiency of the evidence, the weight of the evidence, the meeting of burdens, Zerco's behavior after the termination letter, or other factual issues. We are limited to reviewing legal issues that do not involve a review of the transcript, and we shall point this out where pertinent as we proceed.

## UNTIMELY OBJECTIONS

¶{12} Objections must be filed within fourteen days of the filing of the magistrate's decision. Civ.R. 53(D)(3)(b)(i). Here, the magistrate filed its decision on February 3, 2009. Objections were thus due on Tuesday, February 17, 2009. Zerco did not file its objections until February 23, 2009.

¶{13} In fact, Zerco's February 19, 2009 motion for extension of time was not filed within the time for filing objections. Even if such motion were permitted and even if it had been timely filed, it still did not seek an extension to file objections but spoke solely of researching the issue of a motion for a new trial.

¶{14} We note that the three-day mailing rule in Civ.R. 6(E) does not apply to the time within which objections to a magistrate's decision must be filed. *Duganitz v.*

*Ohio Adult Parole Auth.* (2001), 92 Ohio St.3d 556, 557. Moreover, contrary to Zerco's suggestion, President's Day, which fell on Monday, February 16, 2009, did not extend the time for filing objections. A legal holiday does not extend the time for filing documents unless it falls on the last day of the time prescribed or unless the time prescribed is less than seven days. Civ.R. 6(A). Thus, the objections were untimely.

¶{15} Since no timely objections were filed, the trial court was able to adopt the magistrate's decision, unless it determined that there was an error of law or other defect evident on the face of the decision. See Civ.R. 53(D)(4)(c). Regarding the appellate court's function in this situation, if a party failed to timely object, that party cannot assign any errors on appeal in the absence of plain error. Civ.R. 53(D)(3)(b)(iv), requiring compliance with all of Civ.R. 53(D)(3)(b).

¶{16} Accordingly, the trial court's review was limited by this problem as well as the lack of a transcript. Our review is similarly limited. Plain error review is our only remaining vehicle to address the factual aspects of this appeal, and even that is limited. That is, it is well-established that the recognition of civil plain error can occur only in an "extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, ¶43, quoting *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 122-123. Thus, we focus on Zerco's main legal argument concerning the legal effect of lease termination and the language of the lease here, which was contained in the magistrate's decision.

<u>LANGUAGE OF THE LEASE</u>

¶{17} The pertinent portion of the lease is contained in paragraph 20, which provides in pertinent part as follows:

¶{18} "20. **<u>DEFAULT BY LESSEE:</u>** In the event Lessee should fail to pay any of the monthly installments of rent hereunder or if Lessee shall fail to keep or shall violate any other condition, stipulation or agreement herein contained on the part of the Lessee to be kept and performed, and if such failure shall have continued for a period of fifteen (15) days after notice from Lessor as to nonpayment of rent or thirty (30) days after notice from Lessor as to any other violation, then, in any such event, Lessor, at its option, may (a) terminate this Lease; or (b) reenter the premises by

summary proceedings or otherwise expel Lessee and remove all of Lessee's property therefrom and relet the premises at the best rent obtainable making reasonable efforts therefore and receive the rent therefrom; but Lessee shall remain liable for any deficiency between Lessee's rent hereunder and the rent obtained by Lessor on reletting; or (c) if the default is nonmonetary in nature, cure such default * * * and Lessee agree to promptly therefore reimburse Lessor and save Lessor harmless therefrom. * * * Lessor's rights and remedies hereunder shall be in addition to all other rights and remedies now or hereafter available to Lessor."

ASSIGNMENT OF ERROR

¶{19} Appellant's sole assignment of error provides:

¶{20} "THE TRIAL COURT ABUSED ITS DISCRETION AND EXCEEDED ITS AUTHORITY WHEN IT FAILED TO ENFORCE THE 'DEFAULT BY LESSEEE' CLAUSE OF PARAGRAPH 20 OF THE LEASE AGREEMENTS RELATING TO TERMINATION OF THE LEASE BY APPELLEES AND ARBITRARILY AND UNREASONABLY AWARDING EXCESSIVE DAMAGES."

¶{21} Zerco insists that upon Colbur's termination letter, Zerco's liability for rent stopped accruing. Zerco specifies that when Colbur elected under part (a) of paragraph 20 to terminate the lease, Colbur could not pursue the remedy in part (b) dealing with collection of the deficiency upon the failure to relet and could not pursue any other non-listed remedies either.

¶{22} We begin by pointing out that the Supreme Court has held that absent specific provisions in the lease, the "termination" of a residential lease agreement (by providing the statutory three-day notice to vacate) does not release a tenant from liability for rent not yet due and that even after termination, rent is due until the end of the stated lease term or until the premises are relet, whichever occurs first. *Dennis v. Morgan* (2000), 89 Ohio St.3d 417, syllabus (resolving a conflict in the districts as to whether termination of a lease terminates the tenant's liability for rent). The Court pointed out that R.C. 1923.03 (which applies to both residential and commercial properties) specifies that a forcible entry and detainer action is not a bar to a later action. Id. at 419. The Court alternatively relied on public policy requirements, stating that it would be unfair to permit a tenant to fail to pay rent and wait for the landlord to state that the lease is terminated in order to be freed from its obligation under the

remainder of the lease term. Id. at 420. Contrary to Zerco's argument then, termination is not defined as an end to the tenant's future obligations to pay rent.

¶{23} The *Dennis* Court also held that the landlord has the duty to mitigate damages in attempting to relet after termination. Id. Thereafter, the Court was asked whether this latter holding in *Dennis* applied to commercial leases. *Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, ¶16. The Court held that there was no reason to distinguish a commercial lease on the duty to mitigate and applied this holding from *Dennis* to commercial settings as well. Id. at ¶20-21. The Court noted that the failure to mitigate damages is an affirmative defense, which the tenant has the burden to prove. Id. at ¶21. See, also, *Young v. Frank's Nursery Crafts, Inc.* (1991), 58 Ohio St.3d 242, 244.

¶{24} Just as there is no reason to distinguish a commercial lease from a residential lease on the matter of duty to mitigate, there is also no reason to distinguish the commercial lease from the residential lease regarding the effect of termination on the tenant's liability for rent. As the *Dennis* Court stated, a rule which frees the tenant from remaining liable for contractual rent upon termination by the landlord would be contrary to public policy. *Dennis*, 89 Ohio St.3d at 420.

¶{25} Thus, absent contractual language to the contrary, Colbur's termination letter did not as a matter of law free Zerco from its contractual obligation to pay rent until the end of the contractual period or until Colbur could relet with reasonable diligence. That is, termination does not stop liability for rent due under the contract. This leaves us to evaluate the language in paragraph 20 to see if it contains language to the contrary.

¶{26} The magistrate cited a case that held that the lease's listing of two options for cases of non-payment of rent does not in itself indicate that the choosing of one is exclusive of the other. See *Forest Park Partners v. Ponderosa* (Oct. 18, 1996), 2d Dist. No. 15688 (mentioning one remedy in the lease does not exclude other remedies). Notably, in the case before us, attempting to choose option (b) alone would actually be choosing option (a) as well because entering by summary proceedings or otherwise expelling the tenant, removing all their belongings, and reletting or attempting to relet the premises all result in termination. See *Dennis*, 89 Ohio St.3d at 420.

¶{27} The magistrate also pointed out that some courts have held that an exclusive remedy clause is disfavored and that the contractual intent to limit remedies must be clear. *M.G.A., Inc. v. Amelia Station, Ltd.*, 1st Dist. No. C-010606, 2002-Ohio-5091, ¶21. That court held that if the intent to limit remedies is not clear, then the issue is a factual one. See id.

¶{28} Under general contract interpretation principles, if a contract is reasonably susceptible to more than one meaning, then it is ambiguous and must be construed by the court. See *Shifrin v. Forest City Ents., Inc.* (1992), 64 Ohio St.3d 635, 638. However, if the contract is not reasonably susceptible to more than one meaning, then extrinsic evidence is not permitted and the contract is enforced as written. See id. A clear and unambiguous contract is enforced as a matter of law, and its interpretation is reviewed de novo by the appellate court. See *Inland Refuse Transfer Co. v. Brown-Ferris Indus. of Ohio, Inc.* (1985), 15 Ohio St.3d 321, 322.

¶{29} Here, regardless of whether the listing of two options upon the tenant's nonpayment of rent could create an ambiguity as to whether the landlord can choose both options, we have a default clause with more language than this. The two options must be read in conjunction with the remainder of the paragraph. See *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 273 (examine the contract as a whole and presume that the intent of the parties is reflected in the language used in the policy), citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361.

¶{30} As previously set forth, the paragraph of the lease containing these options concludes by stating:

¶{31} "Lessor's rights and remedies hereunder shall be in addition to all other rights and remedies now or hereafter available to Lessor."

¶{32} Consequently, the lease specifically and unambiguously states that paragraph 20 is not an exclusive remedy clause. Thus, under the plain language of the contract, Colbur is not prohibited from recovering lost rent accruing after the termination letter.[1]

---

[1]Moreover, as the trial court found, Zerco continued to utilize the premises even after the termination letter. For instance, in the year after the termination letter, Zerco still brought potential investors to the building. (Tr. 64). Thus, liability for rent for the term of the lease could be seen as continuing on this basis as well as Zerco failed to accept the termination and continued to utilize the

¶{33} Contrary to another suggestion in Zerco's brief, it was not Colbur's burden to show that its attempt to relet the premises was reasonable or that its failure to mitigate damages was reasonable. See *Frenchtown*, 99 Ohio St.3d 254, ¶20; *Young*, 58 Ohio St.3d at 244. Rather, it was Zerco's burden to prove this affirmative defense, and Zerco set forth no evidence regarding this topic. See id. Plus, the amount of evidence on mitigation is a question requiring a transcript, which (as discussed above) was not provided to the trial court.

¶{34} Finally, contrary to Zerco's final contention, the court did not abuse its discretion in denying a continuance of the damage hearing. The grant or denial of a continuance is a matter entrusted to the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 67. Thus, an appellate court will not reverse a trial court's denial of a continuance absent an abuse of discretion. Id.

¶{35} There is no mechanical test for evaluating the need for a continuance, but some of the factors to consider include: the length of delay requested; other continuances requested and received; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the delay is for a legitimate reason or appears to be a delaying tactic; whether the party requesting the continuance contributed to the circumstance giving rise to the request; and, any other relevant factors depending on the unique circumstances of each case. Id. at 67-68.

¶{36} Here, liability for breach of contract had been decided in January of 2008, and the damage hearing was set soon thereafter. Zerco received a prior continuance due to counsel's schedule. (Tr. 8). An April hearing date was then continued due to a mediation attempt. The October 29, 2008 hearing had been set for months. Zerco's counsel arrived at the Wednesday hearing stating that Mr. Soltesz told him the previous Thursday that a business situation had arisen requiring his presence in Chicago. (Tr. 3). Counsel noted that he had called opposing counsel the next day, who expressed his objection to any continuance.

¶{37} Notably, there is no evidence in the file or the docket that a written request for a continuance was ever filed with the court. Thus, the request was not voiced to the court until the day of the hearing. This could be seen as an untimely request. Furthermore, there was no argument concerning what the testimony of Mr.

---

premises. In any event, this issue is factual and depends upon the evidence contained in the transcript, which was never provided to the trial court.

Soltesz would have accomplished. In addition, as it had been nearly a week since counsel spoke to his client and as counsel remained unaware of when the client would return, the court could see the client's absence as a delaying tactic.

¶{38} In any event, although the magistrate refused to delay the presentation of Colbur's case in chief, the magistrate did not wholly deny a continuance. That is, the magistrate advised counsel to contact his client to determine when he would return to town at which time his testimony could be presented. (Tr. 7, 69). Instead, counsel filed closing arguments in writing thereafter without ever advising on the record that his client was available to testify.

¶{39} Finally, the transcript was not provided to the trial court in ruling on the objections and thus the court did not have before it the arguments concerning the continuance or even the evidence that one had been requested. Zerco's argument regarding a continuance is without merit.

¶{40} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Waite, J., concurs.
Celebrezze, J., concurs