OPINION
{¶ 1} Appellant, Ulah D. Garrison, appeals the January 16, 2004 judgment entry, in which the Willoughby Municipal Court ordered judgment for appellee, Manor Park Apartments, LLC, in the amount of $2,990, plus interest and costs.
 {¶ 2} On February 19, 2003, appellee filed a complaint against appellant for unpaid rent and property damage that occurred during her tenancy. Appellant filed an answer on March 25, 2003. On May 15, 2003, appellant filed a motion to amend her answer and add counterclaims, which was granted. Thereafter, on May 20, 2003, appellant filed her amended answer and counterclaim. In her first counterclaim, appellant alleged that appellee violated the Fair Housing Act and that she had been damaged in the amount of $1,455. In the second counterclaim, she claimed that appellee was fraudulent because it showed her a "model apartment" and not the apartment to which she would be assigned. Hence, she sought damages in the amount of $1,500 for the pain and suffering she endured living in the apartment. On September 4, 2003, a hearing was held before the magistrate.
 {¶ 3} The following facts were stipulated to by the parties. Appellee and appellant entered into a lease agreement commencing on October 1, 2001 through September 30, 2002. Appellant's monthly rent was $490, and she prepaid the last month's rent of $490 and a security deposit of $490. Appellant moved into the complex on September 15, 2001, and paid the prorated amount of rent in full for that month.
 {¶ 4} Appellant testified that her apartment was causing her to be ill.[1] Her symptoms were claustrophobia and anxiety. She claimed that these conditions became so severe that she was forced to sleep at her daughter's house. Appellant stated she had not been treated by a doctor for either of these conditions prior to that time. She attempted to alleviate the problems by shampooing the carpet and scrubbing the floors.
 {¶ 5} On September 30, 2001, appellant gave a notification of her intent to vacate the apartment. On the form, she indicated that her reason for vacating was due to illness. A couple days later, she retracted her notice to vacate after she was informed in writing by appellee's representative that she would be responsible for the balance of her year's rent. She stated that she asked the resident manager to be moved to a larger unit to possibly alleviate the claustrophobia, but her request was denied without any explanation. Appellant recalled that none of her concerns were put in writing by appellee.
 {¶ 6} On October 1, 2001, appellant contacted her doctor regarding her symptoms, and she was prescribed Xanax for anxiety. The Xanax did not help, so she was placed on a stronger medication. Appellant made a verbal request to appellee's representative to be moved to a larger unit, but she was told that the move would involve too much paperwork. After no improvement, she submitted another notice of intent to vacate to appellee on January 9, 2002. On that form, she indicated that her reason for vacating was anxiety attacks and that the small apartment was causing her to be claustrophobic. Appellant vacated the property on January 31, 2002. For her period of occupancy, she paid her rent in full.
 {¶ 7} In a decision dated October 3, 2003, the magistrate recommended that judgment be entered in favor of appellee and against appellant in the amount of $3,415, plus costs and interest, and that judgment be rendered against appellant on her counterclaim. She filed objections to the magistrate's decision on November 14, 2003.[2] The trial court overruled appellant's objections, but modified the magistrate's decision in a judgment entry dated January 16, 2004. In that entry, the trial court entered judgment for appellee in the amount of $2,990, plus interest and costs.[3] It is from that entry that appellant timely filed the instant appeal and now raises the following assignments of error for our review:
 {¶ 8} "[1.] The trial court erred, as a matter of law under42 U.S.C. § 3604(f)(3)(B) of the Fair Housing Amendments Act of 1988, in entering a judgment for [appellee] and in failing to enter a judgment for [appellant] on the [c]omplaint and on the [f]irst [c]ounterclaim.
 {¶ 9} "[2.] The trial court erred, as a matter of law under the common law duty to mitigate damages, in entering judgment for [appellee] and in failing to enter a judgment for [appellant] on the [c]omplaint."
 {¶ 10} In the first assignment of error, appellant alleges that the trial court erred in entering judgment for appellee as a matter of law under 42 U.S.C. § 3604(f)(3)(B) of the Fair Housing Amendments Act of 1988.
 {¶ 11} 42 U.S.C. § 3604(f)(3)(B) defines discrimination to include: "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling * * *." To make out a claim of discrimination based on failure to reasonably accommodate, a tenant must show that (1) she suffers from a handicap as defined by42 U.S.C. 3602(h); (2) the landlord knew or reasonably should have known of the tenant's handicap; (3) accommodation of the handicap may be necessary to afford the tenant an equal opportunity to use and enjoy the dwelling; and (4) the landlord refused to make such accommodation.Giebeler v. MB Assoc. (C.A.9, 2003), 343 F.3d 1143, 1147.
 {¶ 12} Here, to prevail on a claim of handicap discrimination, appellant was required to show she suffered from a handicap, appellee knew or should have known of that handicap, accommodation was necessary, and appellee refused to make the accommodation. The magistrate determined that "the communications made by [appellant] to [appellee] were insufficient to provide notice to [appellee] of the extent of her handicap to invoke the provisions of the law. * * *"
 {¶ 13} It is our view that appellant stated that she had conversations with appellee's representatives about her "illness," but there were no written requests stating she needed an accommodation or transfer to another unit until January 9, 2002. In her first notification of intent to vacate, appellant stated that the reason for vacating was due to illness. However, that notice was insufficient under the Fair Housing Act. After that notice, appellant on a couple of occasions orally requested to be moved to a larger unit to alleviate her condition. She indicated that she wanted to be moved to a larger unit to alleviate the claustrophobia. Further, in the second notice, she indicated, in writing, that her reason for vacating was anxiety attacks and that the small apartment was causing her to be claustrophobic. Thus, although appellant's September 30, 2001 notification of intent to vacate was insufficient, there were at least two other occasions where appellant orally requested a reasonable accommodation and tied in the fact that her handicap and illness were caused by the size and physical character of her small apartment. These two oral requests were made before January 9, 2002, when appellant finally submitted her second notice of intent to vacate.
 {¶ 14} Based on the Fair Housing Act, it is not required that a request be made in a particular manner or at a particular time. In fact, a reasonable accommodation request can be made orally or in writing, even though it is helpful for both the resident and housing provider if the request is made in writing. Accordingly, we conclude that the trial court erred in entering judgment for appellee. Appellee's representative was orally informed on a couple of occasions of appellant's illness and handicap. Appellee's representative was also orally notified by appellant of her request for a reasonable accommodation on a couple of different occasions. She made these requests to the same person, yet the requests were ignored and she was told that an accommodation would involve too much paperwork. Therefore, even though appellant did not put her request in writing until January 9, under the Fair Housing Act, appellee had a duty to consider the oral requests prior to that time. Appellant's first assignment of error is sustained.
 {¶ 15} For the second assignment of error, appellant contends the trial court erred in entering judgment for appellee under the common law duty to mitigate damages.
 {¶ 16} A landlord has a duty to make reasonable efforts to mitigate damages incurred when a lessee vacates the property before the expiration of the lease term. Dennis v. Morgan (2000), 89 Ohio St.3d 417, 419. "Landlords mitigate by attempting to rerent the property. Their efforts to do so must be reasonable, and the reasonableness should be determined at the trial level. If the lessor has acted reasonably in attempting to secure a new tenant, the lessee is liable for the rent up to the point of the lessor's finding a new tenant, or the expiration of the lease, whichever is earlier." Id. A landlord is not required to use extraordinary efforts to find a new tenant or attempt the unreasonable or impracticable. Hines v. Riley (1998), 129 Ohio App.3d 379, 383; Foustv. Valleybrook Realty Co. (1981), 4 Ohio App.3d 164, 168. Whether a landlord made reasonable efforts to mitigate damages is a question of fact to be resolved by the trier of fact.
 {¶ 17} Some degree of deference is appropriate in reviewing a trial court's factual determinations; accordingly, we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings. See C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. at syllabus. Furthermore, we are guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses, observe their demeanor, gestures, voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80.
 {¶ 18} In the instant matter, the testimony at the hearing revealed that appellee ran newspaper advertisements in a couple publications, posted signs in front of the complex indicating that suites were available, and offered referral bonuses to current residents. Yet, appellee did not offer appellant a reasonable accommodation after she requested one. Thus, appellee did not make reasonable efforts to mitigate its damages. It is our view that there was not competent, credible evidence to support the trial court's determination that appellee made reasonable efforts to mitigate damages caused by the breach. Hence, the judgment is against the manifest weight of the evidence. Appellant's second assignment of error has merit.
 {¶ 19} For the foregoing reasons, appellant's assignments of error are well-taken. The judgment of the Willoughby Municipal Court is reversed and judgment is entered in favor of appellant on appellee's complaint. Further, the matter is reversed and remanded for further proceedings consistent with this opinion with respect to damages, if any, on appellant's counterclaim.
Rice, J., concurs, Grendell, J., dissents with Dissenting Opinion.
[1] Appellant previously resided in the apartment complex in 1994, and did not exhibit any health problems.
[2] Appellant filed a motion for an extension of time to file objections to the magistrate's decision. The trial court granted her motion and allowed her until November 14, 2003 to file the objections.
[3] The judgment of the trial court took into account appellee's claim for all of the rent due for the remainder of the lease, i.e. $2,930, and for $60 damage to a bathroom door. However, it did not include appellee's $425 for the re-rental fee, carpet cleaning charge, and painting charge.