OPINION
{¶ 1} This is an accelerated calendar case. Appellant, Manor Park Apartments ("Manor Park"), appeals the judgment entered by the Willoughby Municipal Court.
 {¶ 2} Manor Park owns and operates an apartment complex in Eastlake, Ohio. In February 2004, appellee, Darlene Delfosse, entered into a one-year lease agreement with Manor Park. The rent for Delfosse's apartment was $500 per month. In addition, Delfosse paid Manor Park a $500 security deposit. Delfosse made all of her rent payments through July 2004. She did not make her August 2004 rent payment. Delfosse lived in the apartment through August 12, 2004. At that time, she was given a notice to vacate for failing to pay rent. Delfosse vacated the apartment in response to the notice.
 {¶ 3} Manor Park initiated this action against Delfosse to recover the unpaid rent for the months of August 2004 through February 2005. Also, Manor Park sought to recover damages to the apartment.
 {¶ 4} An evidentiary hearing was held before the magistrate. At the beginning of the hearing, the parties stipulated that Delfosse owed Manor Park $170 for physical damages to the apartment. Thereafter, the magistrate heard evidence regarding Manor Park's efforts to rerent Delfosse's apartment.
 {¶ 5} The magistrate recommended a judgment in favor for Manor Park for $670. This amount represented the $170 in physical damages to the apartment and two months of unpaid rent, less the $500 security deposit. The trial court adopted the magistrate's decision and entered judgment in the amount of $670.
 {¶ 6} In response to Manor Park's request, the magistrate issued findings of fact and conclusions of law. Therein, the magistrate found that Delfosse was liable for rent payments for August and September 2004, but was not liable for rent payments for October 2004 through February 2005. The magistrate found that it was unclear whether Manor Park made reasonable efforts to rerent Delfosse's apartment. The trial court adopted these findings of fact and conclusions of law.
 {¶ 7} Pursuant to Civ. R. 53(E)(3), Manor Park filed objections to the magistrate's decision. The trial court overruled Manor Park's objections and again entered judgment in favor of Manor Park for $670. Manor Park has timely appealed the trial court's judgment to this court.
 {¶ 8} Manor Park raises three assignments of error. Its first assignment of error is:
 {¶ 9} "The trial court erred by considering the affirmative defense of failure to mitigate damages when Defendant/Appellee never pleaded that defense."
 {¶ 10} Landlords have a duty to mitigate damages.[1] "The failure to mitigate damages is an affirmative defense."[2]
 {¶ 11} Manor Park argues that since Delfosse did not file an answer to its complaint, she did not raise the issue of failure to mitigate damages as an affirmative defense pursuant to Civ. R. 8(C); therefore, the trial court erred by considering this issue. We disagree. The Eighth Appellate District has held, "the [trial] court properly considers an affirmative defense that was not raised in accordance with Civ. R. 8(C) when the issue was tried with the implied consent of the parties and was properly before the trial court for determination pursuant to Civ. R. 15(B)."[3]
 {¶ 12} Manor Park called Steve Sparbeck, a consultant at its property, as a witness. On direct examination, Manor Park extensively questioned Sparbeck regarding the efforts made to rerent Delfosse's apartment. In fact, this was the focus of the direct examination of Sparbeck. Since Manor Park raised the issue of mitigation of damages at the trial court level, the issue was tried to the trial court with Manor Park's implied consent. Therefore, the trial court did not err by considering the defense of failure to mitigate damages.
 {¶ 13} Manor Park's first assignment of error is without merit.
 {¶ 14} Manor Park's second assignment of error is:
 {¶ 15} "The trial court erred in placing the burden of proof upon Plaintiff/Appellant to demonstrate that it had attempted to mitigate it's [sic] damages."
 {¶ 16} Manor Park asserts that the trial court incorrectly shifted the burden of proof from Delfosse to Manor Park. It notes the following statement in the magistrate's findings of fact and conclusions of law, "it is unclear whether [Manor Park] made reasonable effort to mitigate its damages in this particular Lease." Manor Park argues that if the issue was "unclear," Delfosse should be liable for the unpaid rent for the remainder of her lease, because Delfosse, not Manor Park, had the burden of proof.
 {¶ 17} A tenant, as the defendant asserting an affirmative defense, does have the burden of proving the landlord failed to mitigate damages.[4]
 {¶ 18} The Supreme Court of Ohio has held:
 {¶ 19} "Landlords mitigate by attempting to rerent the property. Their efforts to do so must be reasonable, and the reasonableness should be determined at the trial level. If the lessor has acted reasonably in attempting to secure a new tenant, the lessee is liable for the rent up to the point of the lessor's finding a new tenant, or the expiration of the lease, whichever is earlier."[5]
 {¶ 20} In support of its position, Manor Park cites the Seventh Appellate District's holding in Applecrest Village Ltd. Partnership v.Yaple[6] In that case, the court held "[t]hus, the burden was on [the tenant] to demonstrate that [the landlord] did not use reasonable efforts to mitigate its damages[.]"[7] We disagree with this statement.
 {¶ 21} We believe the definition of mitigation needs closer examination. The Supreme Court of Ohio has held, "contract law acknowledges that mitigation, otherwise known as the doctrine of avoidable consequences, may justly place the injured party `in as good a position had the contract not been breached at the least cost to the defaulting party.'"[8] In this matter, to successfully mitigate damages, Manor Park needed to rerent Delfosse's apartment. Thus, the rental income from the new tenant would offset the rental payments Manor Park lost due to Delfosse's failure to pay rent. We note that the doctrine of mitigation of damages requires that the plaintiff make "reasonable efforts to alleviate the effects" of the breach of contract.[9] Thus, if the landlord makes reasonable efforts to rerent the apartment, it will not be liable for failing to mitigate damages.[10] It is important to note the distinction between actually mitigating damages and making reasonable efforts to mitigate damages.
 {¶ 22} In reality, the assertion that the landlord made reasonable efforts to mitigate damages is an exception to the rule requiring the mitigation of damages. A party who asserts an exception to a rule has the burden of proof to show that the exception applies.[11] Thus, in these circumstances, the landlord, as the party asserting an exception to the general rule requiring mitigation of damages, has the burden to present evidence that reasonable efforts were made to rerent the apartment.
 {¶ 23} Accordingly, we believe a burden-shifting exercise is appropriate in these circumstances. First, the landlord, as the plaintiff, has the burden of demonstrating that the tenant did not pay the rent. Next, the tenant has the burden of demonstrating that the landlord did not mitigate its damages by rerenting the apartment. Finally, the landlord has the burden of demonstrating that it made reasonable efforts to mitigate damages (by attempting to rerent the apartment).
 {¶ 24} Traditional evidentiary rules as well as public policy considerations support this conclusion. As stated by the Supreme Court of North Carolina:
 {¶ 25} "Two general rules guide the allocation of the burden of proof outside the criminal context: (1) the burden rests on the party who asserts the affirmative, in substance rather than form, and (2) the burden rests on the party with peculiar knowledge of the facts and circumstances."[12]
 {¶ 26} Requiring the tenant to prove that the landlord did not make reasonable efforts to rerent the apartment requires the tenant to prove a negative. The burden should be placed on the party seeking to demonstrate the affirmative. Thus, the burden of proof is on the landlord to demonstrate that reasonable efforts to rerent the apartment were made.
 {¶ 27} Further, the tenant does not have access to the landlord's business records and has no idea what efforts were, or were not, taken to attempt to rerent the apartment. The landlord, however, has the peculiar knowledge of what acts were taken in an attempt to rerent the apartment. As occurred in this matter, the landlord is in a much better position to present evidence as to advertising, prospective tenants visiting the apartment, and overall occupancy rates. A typical tenant would not be privy to this information.
 {¶ 28} If we were to strictly follow the Seventh District's holding, that the tenant has the burden of demonstrating that the landlord did not make reasonable efforts to rerent the property, several significant burdens would be placed on the tenant. The following synopsis represents a typical trial if the Seventh District's holding is strictly followed in these types of cases. In its case-in-chief, the landlord would simply present evidence that the tenant failed to pay his or her rent. In response, the tenant could present evidence that the apartment was not rerented. The tenant would then have the duty to prove a negative, that the landlord failed to make reasonable efforts to rerent the apartment, without having knowledge of any of the relevant facts on that issue. Accordingly, in nearly every instance, the landlord could merely sit back and wait for the tenant to fail to present evidence regarding the landlord's failure to make reasonable efforts to rerent the apartment. Finally, the matter would be submitted to the trier-of-fact, with no evidence whatsoever presented on the issue of whether the landlord made reasonable efforts to rerent the apartment. The result would be a judgment against the tenant. Such a rule does not encourage landlords to make reasonable efforts to mitigate their damages.
 {¶ 29} Finally, we note our holding is consistent with several other appellate districts. In Pinnacle Mgt. v. Smith, the Twelfth District held that the trial court did not shift the burden to the plaintiff but, rather, weighed the evidence before it.[13] However, the only evidence presented in that case regarding mitigation of damages was the testimony of the apartment owner regarding his efforts to rerent the partment.[14] The Twelfth District affirmed the trial court's finding that the landlord did not make reasonable efforts to mitigate its amages.[15] While the Twelfth District stated the trial court did not shift the burden to the landlord, it is clear that this occurred. Likewise, in Oakwood Estates v. Crosby, the Eighth District held that the trial court did not shift the burden to prove the efforts to mitigate damages were reasonable to the landlord.[16] All of the evidence in that case regarding the efforts taken was presented by the landlord.[17] Thus, when the trial court in that matter noted the lack of evidence regarding the reasonableness of the landlord's efforts to mitigate damages, it effectively shifted the burden of proof to the landlord.
 {¶ 30} In this matter, Delfosse met her burden through the initial stipulations. While reading the stipulations, Counsel for Manor Park informed the trial court that Manor Park was unable to rerent Delfosse's apartment. Since Delfosse's apartment was not rerented, Manor Park did not mitigate its damages. However, at that time, Manor Park had the opportunity to present evidence to the trial court regarding the efforts taken to rerent Delfosse's apartment. The burden to prove that those efforts were reasonable fell on Manor Park.
 {¶ 31} Manor Park's second assignment of error is without merit.
 {¶ 32} Manor Park's third assignment of error is:
 {¶ 33} "The trial court's finding that Plaintiff/Appellant failed to mitigate its' [sic] damages during the last five (5) months of Defendant/Appellee's lease is against the manifest weight of the evidence and is error."
 {¶ 34} The determination of the reasonableness of the landlord's efforts to rerent the apartment is a decision left for the trial court.[18] In addition, this court reviews a trial court's determination on the manifest weight of the evidence standard.[19]
Thus, "[s]ome degree of deference is appropriate in reviewing a trial court's factual determinations; [and] we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings."[20]
 {¶ 35} After considering the evidence and having the ability to observe the witnesses and their demeanor, the magistrate concluded that Manor Park did not demonstrate it engaged in sufficient efforts to rerent the apartment. Specifically, the magistrate noted that there was no evidence regarding the number of prospective tenants that visited Manor Park or what percentage of those prospective tenants were shown Delfosse's apartment. Further, the magistrate was concerned with Manor Park's high vacancy rate during the months it had a duty to mitigate, compared to a relatively low vacancy rate at the time of trial, only a few months later.
 {¶ 36} Manor Park argues that it presented evidence that it advertised its available units in an apartment guide and had "now leasing" flags on its property. "The mere fact that a landlord advertises the apartment does not, by itself, preclude a finding that the landlord was unreasonable in his mitigation efforts.'"[21] We note there are no "bright line rules" for the inquiry of when the landlord's efforts become reasonable.[22]
 {¶ 37} In this matter, the trial court apparently placed more emphasis on Manor Park's efforts to rerent this particular apartment. While Manor Park presented evidence regarding its general marketing efforts, there was no specific evidence presented regarding what efforts were made to rerent Delfosse's apartment. Sparbeck testified as to the procedure Manor Park engaged in when a prospective tenant came to look for an apartment. He testified that the prospective tenant indicated what they were looking for and, then, Manor Park employees would pick out an apartment unit that best suited their wishes. Thus, there was some discretion on the part of Manor Park employees as to which apartment units they would show a prospective tenant.
 {¶ 38} Again, at the appellate level, we must afford due deference to the trial court's factual determinations.[23] Since the trial court's decision was supported by competent, credible evidence, we will not disturb it on appeal.
 {¶ 39} The trial court's judgment is not against the manifest weight of the evidence.
 {¶ 40} Manor Park's third assignment of error is without merit.
 {¶ 41} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs in judgment only, DIANE V. GRENDELL, J., dissents with Dissenting Opinion.
[1] Dennis v. Morgan (2000), 89 Ohio St.3d 417, 419.
[2] (Citation omitted.) Pinnacle Mgt. v. Smith, 12th Dist. No. CA2003-12-327, 2004-Ohio-6928, at ¶ 12.
[3] (Citations omitted.) Oakwood Estates v. Crosby, 8th Dist. No. 85047, 2005-Ohio-2457, at ¶ 11. See, also, Stumph Road Properties Co. v.Suchevits, 8th Dist. No. 86513, 2005-Ohio-5730, at ¶ 11.
[4] Stumph Road Properties Co. v. Suchevits, 2005-Ohio-5730, at ¶ 18, citing Hines v. Riley (1998), 129 Ohio App.3d 379.
[5] Dennis v. Morgan, 89 Ohio St.3d at 419.
[6] Applecrest Village Ltd. Partnership v. Yaple, 7th Dist. No. 01-CA-185, 2003-Ohio-695.
[7] Id. at ¶ 21.
[8] Frenchtown Square Partnership v. Lemstone, Inc.,99 Ohio St.3d 254, 2003-Ohio-3648, at ¶ 12, quoting F. Ent., Inc. v. Kentucky FriedChicken Corp. (1976), 47 Ohio St.2d 154, 159-160.
[9] Black's Law Dictionary (8 Ed.Rev.2004) 1024.
[10] See Dennis v. Morgan, 89 Ohio St.3d at 419.
[11] See, e.g., Carver v. Deerfield Twp. (2000), 139 Ohio App.3d 64,75.
[12] (Citation omitted.) Peace v. Emp. Sec. Comm. of NorthCarolina (1998), 349 N.C. 315, 328, 507 S.E.2d 272, 281.
[13] Pinnacle Mgt. v. Smith, 2004-Ohio-6928, at ¶ 15.
[14] Id. at ¶ 13.
[15] Id. at 14.
[16] Oakwood Estates v. Crosby, 2005-Ohio-2457, at ¶ 14.
[17] Id. at ¶ 10.
[18] Frenchtown Square Partnership v. Lemstone, Inc.,99 Ohio St.3d 254, 2003-Ohio-3648, at paragraph two of the syllabus.
[19] Manor Park Apts., LLC v. Garrison, 11th Dist. No. 2004-L-029,2005-Ohio-1891, at ¶ 17.
[20] Id., citing C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279.
[21] Oakwood Estates v. Crosby, 2005-Ohio-2457, at ¶ 13, quotingPinnacle Mgt. v. Smith, 2004-Ohio-6928, at ¶ 14, citing Beatley v.Schwartz, 10th Dist. No. 03AP-911, 2004-Ohio-2945, at ¶ 17.
[22] Beatley v. Schwartz, at ¶ 17.
[23] See Manor Park Apts., LLC v. Garrison, supra, at ¶ 17.