OPINION
{¶ 1} Plaintiff-appellant, Jack Beatley, Trustee, appeals and defendants-appellees, Eugene G. and Amy K. Schwartz, cross-appeal from a judgment of the Franklin County Municipal Court awarding $1,120 to defendants. For the following reasons, we affirm, as modified, the judgment of the trial court.
 {¶ 2} On April 26, 2002, Eugene W. Schwartz ("Geno") and Zach Webb ("Zach") entered into a residential lease agreement with plaintiff for a three-bedroom apartment located at 195 East 16th Street, Apartment C, Columbus, Ohio. The lease was to commence on September 23, 2002, and end on August 29, 2003. Defendants, who are the parents of Geno, signed as guarantors with respect to the lessees' liabilities under the lease. The lease required a security deposit in the amount of $1,125, which was equivalent to one month's rent. Geno paid part of the security deposit, $150, in April 2002. The balance of the security deposit was submitted to plaintiff in July 2002. (Defendant's Exhibit 1.) Subsequently, Geno and Zach sent a letter to plaintiff informing plaintiff that they would be unable to financially afford to meet their obligations under the lease. (Plaintiff's Exhibit H.) Plaintiff replied to Geno and Zach, asserting that they remained "responsible for all terms and conditions of the lease." (Plaintiff's Exhibit D.)
 {¶ 3} In September 2002, information about the apartment was placed on a listing of available apartments. According to plaintiff, this listing was posted on the door of his office and was distributed on campus. (Tr. 14-15.) Plaintiff advertised the apartment's availability in The Lantern, a student newspaper at The Ohio State University. (Tr. 16; Plaintiff's Exhibit K.) A sign was placed on the subject apartment building. Plaintiff testified as to the difficulty of renting apartments to students during September, October, and November. "The market demand is vastly diminished" in those months. (Tr. 16.) Plaintiff testified that his subletting policy requires sublessees to provide a security deposit. (Tr. 21.)
 {¶ 4} Regarding the search for potential tenants after the anticipatory breach, Geno testified as follows: "I asked [plaintiff] if he could rent the place out — not rent the place out, but help advertise it or do something. And he said that he needed to get rid of all the apartments that he had before that one could go on the market, and he said that he really didn't need to do anything because he had his co-signers and he wasn't worried about it." (Tr. 89.) According to Geno, plaintiff gave him the impression that plaintiff "wasn't worried about anything besides having the signers, which pretty much put all the pressure on me to go find people to move in because it was very threatening." (Tr. 90.) Geno posted flyers, which provided information about the apartment, around The Ohio State University campus.
 {¶ 5} On September 23, 2002, Geno, after receiving a key to the apartment, showed the apartment to Kain Waggoner and David Burkhart. According to Geno, these individuals "were very interested" in the apartment. (Tr. 94.) Geno accompanied Mr. Waggoner and Mr. Burkhart to plaintiff's office. According to Geno, Mr. Waggoner and Mr. Burkhart "signed the lease, filled out the applications, and they were writing out their checks." (Tr. 95.) Plaintiff was unwilling to transfer the security deposit. Neither Mr. Waggoner nor Mr. Burkhart entered a lease agreement with plaintiff with respect to the subject apartment. When asked by the court to discuss his understanding of why he was not permitted to lease the apartment, Mr. Burkhart testified as follows:
Well, the first one was that the other roommate, he was being required to have a co-signer, which he could not do, which I had no problem with myself. But without having a roommate, I didn't want to get into someplace with just me and having Geno taking up whatever slack there was. And then just the fact there was a second payment that I needed to make immediately for the 1,125. The girl had told me that I needed that within a matter of a couple weeks.
(Tr. 134.)
 {¶ 6} In March 2003, the apartment was rented to two individuals, for $300 per month per person, for the remainder of the lease term. Plaintiff testified at trial that he was owed $9,474.44 under the lease after the $1,125 had been applied to the account balance. (Tr. 28-29.)
 {¶ 7} On December 20, 2002, plaintiff filed a complaint in the Franklin County Municipal Court against defendants, as guarantors, for breach of contract. Defendants filed a counterclaim, asserting their right to the security deposit. In a judgment entry dated June 27, 2003, the trial court granted summary judgment in favor of plaintiff on the issue of breach of contract, but assigned the matter to trial on the issue of damages. The court also overruled plaintiff's motion to strike defendants' counterclaim concerning the security deposit.
 {¶ 8} After the trial on August 27, 2003, the court issued a judgment entry and decision, which was filed on September 8, 2003. The trial court found that even though defendants breached, "plaintiff did not employ a reasonable effort to mitigate," and accordingly found plaintiff entitled to only $5 nominal damages. (Sept. 8, 2003 Judgment Entry and Decision, at 3.) Regarding defendants' security deposit counterclaim, the court found that "defendants are entitled to the return of their security deposit less nominal damages for the breach of the lease." Id. The court did not award double damages "because the court finds that there is a breach of the lease agreement." Id. The court awarded $1,120 to defendants.
 {¶ 9} Plaintiff appeals from this judgment, assigning the following errors:
I. The trial court's judgment was contrary to law in that the court failed to award appellant judgment for the full amount of damages asserted in his complaint and proven at trial.
II. The trial court's judgment was against the manifest weight of the evidence.
III. The trial court erred in awarding appellees judgment on their counterclaim for the security deposit.
IV. The trial court erred in failing to admit plaintiff's exhibit Q, the student housing legal clinic's informational flyer regarding subleases.
 {¶ 10} Defendants cross-appeal from the trial court's judgment, assigning the following single assignment of error:
The trial court erred as a matter of law by failing to award double damages and reasonable attorneys fees on Defendants' counterclaim because the award of such damages is mandatory under Ohio law once there is a finding of fact that the landlord wrongfully withheld any portion of the security deposit pursuant to Ohio Revised Code section 5321.16(C).
 {¶ 11} Because they are interrelated, we will address plaintiff's first and second assignments of error together. By his first assignment of error, plaintiff asserts that the trial court erred when it did not award him the amount of damages asserted in his complaint. In his second assignment of error, plaintiff asserts that the judgment was against the manifest weight of the evidence.
 {¶ 12} A landlord has a duty to employ reasonable efforts to mitigate damages caused by the breach of a residential lease agreement. Dennis v. Morgan (2000), 89 Ohio St.3d 417, 419;Zunshine v. Wallace F. Ackley Co. (Mar. 30, 2000), Franklin App. No. 99AP-531. "Landlords mitigate by attempting to rerent the property. Their efforts to do so must be reasonable, and the reasonableness should be determined at the trial level. If the lessor has acted reasonably in attempting to secure a new tenant, the lessee is liable for the rent up to the point of the lessor's finding a new tenant, or the expiration of the lease, whichever is earlier." Dennis, at 419. However, a landlord is not required to use extraordinary efforts to find a new tenant or attempt the unreasonable or impracticable. Zunshine, citingFoust v. Valleybrook Realty Co. (1981), 4 Ohio App.3d 164, 168;Endersby v. Schneppe (1994), 73 Ohio App.3d 212. The failure to mitigate damages is an affirmative defense. Zunshine, citingYoung v. Frank's Nursery Crafts, Inc. (1991),58 Ohio St.3d 242, 244. Whether a landlord made reasonable efforts to mitigate damages is a question of fact to be resolved by the trier of fact.
 {¶ 13} This court has previously stated that "some degree of deference [is] appropriate in reviewing a trial court's factual determinations; accordingly, we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings." Wiltberger v. Davis (1996),110 Ohio App.3d 46, 52 ("This standard of review of factual determinations is akin to that employed in a review of the manifest weight of the evidence in civil cases generally, as approved in C.E. Morris Co. v. Foley Constr. Co. [1978],54 Ohio St.2d 279").
 {¶ 14} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris, at syllabus. Furthermore, "a reviewing court must be guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses, observe their demeanor, gestures, voice inflections, and use these observations in weighing the credibility of the proffered testimony." Whiting v.Ohio Dept. of Mental Health (2001), 141 Ohio App.3d 198, 202, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. We find that competent, credible evidence supports the trial court's finding that plaintiff did not make reasonable efforts to mitigate damages caused by the breach. Moreover, the judgment is not against the manifest weight of the evidence.
 {¶ 15} This case is distinguishable from Hines v. Riley
(1998), 129 Ohio App.3d 379 (Kline, J., with two judges concurring in judgment only), which found that the tenants had not carried their burden in proving that the landlord had failed to mitigate damages. Unlike the case at bar, in Hines, the court found no evidence that the landlord had failed to make reasonable efforts to mitigate her damages. Here, some competent, credible evidence supports the trial court's finding that plaintiff failed to make reasonable efforts to mitigate his damages.
 {¶ 16} The trial court found plaintiff's conduct to be unreasonable because "plaintiff entered into a lease agreement with Webb and Schwartz on April 26, 2002 with only $150.00 being deposited toward the security deposit. It appears to the court that plaintiff was being obstinate in the mitigation of damages in this instance." (Sept. 8, 2003 Judgment Entry and Decision, at 2.) Furthermore, the trial court stated: "The court finds from the testimony and the credibility of the witnesses that plaintiff more or less seemed blinded from mitigating the damages because there were guarantors on the rental agreement." Id. These findings are supported by such evidence as Geno's testimony that plaintiff seemed disinterested in re-renting the apartment because of the guarantors (defendants) as well as evidence indicating plaintiff's apparent unwillingness to transfer the security deposit.
 {¶ 17} A trial court's resolution of the issue of whether a landlord has demonstrated reasonable efforts to mitigate damages is fact-specific, and does not lend itself to bright-line rules. For example, the fact that plaintiff advertised the apartment does not, in itself, necessarily preclude a finding that plaintiff was unreasonable in his mitigation efforts. In this case, some competent, credible evidence supports a contrary conclusion, and therefore the trial court's decision must not be reversed by this appellate court on this basis. See C.E.Morris, supra, at syllabus.
 {¶ 18} Upon our review of the record in this case, we conclude that the trial court's finding, as to the reasonableness of plaintiff's efforts to mitigate damages, is supported by competent, credible evidence, and that it is not against the manifest weight of the evidence. In sum, given the evidence in this case, the trial court reached a reasonable conclusion as to the mitigation issue. Accordingly, plaintiff's first and second assignments of error are hereby overruled.
 {¶ 19} In his third assignment of error, plaintiff asserts that the trial court erred when it awarded judgment in favor of defendants with respect to the security deposit claim. Plaintiff argues that defendants failed to present evidence at trial that the entire interest in the security deposit was transferred to them. Plaintiff also argues that, notwithstanding the apparent lack of evidence that the entire interest was transferred, defendants lacked standing to assert a claim under R.C. 5321.16. Lastly, plaintiff argues that the trial court should have denied this claim on the basis of champerty or maintenance.
 {¶ 20} Initially we address plaintiff's claims of maintenance or champerty in the assignment of the interest in the security deposit. "`Maintenance' is assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case. `Champerty' is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues." Rancman v. Interim SettlementFunding Corp., 99 Ohio St.3d 121, 2003-Ohio-2721, ¶ 10. Plaintiff's arguments regarding champerty and maintenance are without merit because Geno and Zach had a bona fide interest in the case against defendants.
 {¶ 21} Despite defendants' arguments to the contrary, we find that defendants lacked standing to assert a claim, under R.C.5321.16(C), to recover twice the amount of the security deposit that was assigned to them and attorneys fees. "It is a basic doctrine of statutory construction that when the legislature has authorized an action to be instituted by a particular person or office, the suit may not be instituted by another." Nielson v.Ford Motor Co. (1996), 113 Ohio App.3d 495, 500. R.C. 5321.16(C) provides that "[i]f the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees." (Emphasis added.) Furthermore, R.C. 5321.01 defines "tenant" as "a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others." Under this definition, defendants were not tenants in the case at bar.
 {¶ 22} Thus, even if Geno and Zach assigned their interests in the security deposit to defendants, defendants are not entitled to recover twice the amount of the security deposit or reasonable attorneys fees under R.C. 5321.16(C). Cf. ArborVillage Condominium Assn. v. Arbor Village Ltd., L.P. (1994),95 Ohio App.3d 499 (finding standing for condominium association to bring an action under R.C. 5311.26); Boldan v. SuburbanApartment Mgt. Co. (Mar. 2, 1984), Cuyahoga App. No. 47089 (affirming judgment that awarded tenant and guarantor return of a security deposit, damages, and attorneys fees under 5321.16). In other words, given the Legislature's use of "tenant" in R.C.5321.16, as it is clearly defined in R.C. 5321.01, we are unwilling to construe R.C. 5321.16 to permit the recovery of double damages and reasonable attorneys fees for guarantors who have been assigned an interest in a security deposit.
 {¶ 23} However, even though defendants could not recover twice the amount of the security deposit and attorneys fees under R.C. 5321.16(C), defendants were not precluded from recovering the security deposit under common law principles, if the interest in the security deposit was validly assigned. See Castlebrook,Ltd. v. Dayton Properties Ltd. Partnership (1992),78 Ohio App.3d 340, 347 ("In Ohio, security deposits are not `rent, issues, and profits' of the property; rather they are a personal obligation in the nature of a pledge between the landlord and the tenant."). R.C. 5321.16 essentially codifies the common law principle that a tenant is entitled to the security deposit pledged, minus appropriate deductions, when the rental agreement is terminated.[1] See Tuteur v. P. F. Enterprises, Inc.
(1970), 21 Ohio App.2d 122 (discussing tenant's right to security deposit). In this sense, the enactment of the Landlord and Tenant Act of 1974 did not create a private cause of action for the recovery of a security deposit. See Skerl v. Sheet MetalProducts Co., Inc. (July 1, 1982), Cuyahoga App. No. 43743 ("The return of a tenant's security deposit is governed by the law of contracts * * *."). In sum, we do not view the use of the word "tenant" in R.C. 5321.16 as precluding a guarantor with an interest in the security deposit from recovering that security deposit under common law principles.
 {¶ 24} Furthermore, the fact that defendants cited R.C.5321.16 in their amended counterclaim did not preclude them from recovering under common law principles relating to security deposits. See Civ.R. 8(A) ("[a] pleading that sets forth a claim for relief * * * shall contain * * * a short and plain statement of the claim showing that the party is entitled to relief");Saylor v. Providence Hosp. (1996), 113 Ohio App.3d 1, 4 ("While Civ.R. 8[A] provides that a pleading which sets forth a claim for relief need not state all elements of the claim, enough must be pleaded so that the person or entity sued has adequate notice of the nature of the action."); see, also, Iacono v. AndersonConcrete Corp. (1975), 42 Ohio St.2d 88, 92, quoting Conley v.Gibson (1957), 355 U.S. 41, 48, 78 S.Ct. 99 ("[a]n important principle underlying the adoption of the Civil Rules is that the rules `reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'").
 {¶ 25} Plaintiff has argued that he is entitled to retain the security deposit as liquidated damages, pursuant to the lease, for the breach of the lease. Contrary to plaintiff's arguments, we view the lease's "liquidated damage fee" provision as a penalty provision, and therefore unenforceable. As stated by the Supreme Court of Ohio, in Sampson Sales, Inc. v. Honeywell,Inc. (1984), 12 Ohio St.3d 27, syllabus:
Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.
 {¶ 26} Furthermore, "[a] valid liquidated damages clause contemplates the nonbreaching party's inability to identify and mitigate its damages." Lake Ridge Academy v. Carney (1993),66 Ohio St.3d 376, 385. Here, plaintiff had a duty, as a matter of law, to mitigate his damages caused by the breach of a residential lease agreement. In spite of that duty, the trial court found that plaintiff was not reasonable in his efforts to mitigate damages. Clearly, damages resulting from the breach of a residential lease are not difficult to prove or uncertain as to amount. Thus, plaintiff's argument that he is entitled to the security deposit because of the "liquidated damage fee" provision in the lease is without merit. Moreover, Geno and Zach did not legally forfeit their right to the security deposit in the letter postmarked September 7, 2002. (Plaintiff's Exhibit H.)
 {¶ 27} The evidence at trial did not support a finding that the entire security deposit had been assigned to defendants. In its decision, the trial court states, "[t]he prospective tenants testified that they assigned their claims for the return of their security deposit to defendants, Amy and Eugene Schwartz." (Sept. 8, 2003 Judgment Entry and Decision, at 3.) The evidence at trial only supported a finding that an interest in the security deposit in the amount of $375 had been assigned to defendants. Zach testified that he had paid $375 of the security deposit. (Tr. 138.) According to Zach, he assigned his right to that security deposit to defendants. Id. This evidence at trial supported a finding that one-third of the interest in the security deposit had been assigned to defendants.
 {¶ 28} Defendants argue that "[t]he assignment documents were in the record and properly before the court in advance of trial. As a result, there was no need for Appellees to present testimony at trial regarding the existence of the assignments." (Defendants' brief, at 15.) We disagree. Unless attachments to pleadings are admitted into evidence at trial, the attachments may not be considered as evidence by the trial court. See Stateex rel. Benesch, Friedlander, Coplan Arnoff, L.L.P. v.Rossford (2000), 140 Ohio App.3d 149, fn. 2 ("Pleadings are not evidence. * * * It follows that attachments to pleadings are, therefore, not evidence."). Thus, evidence at trial only indicated that $375 of the security deposit had been assigned to defendants.
 {¶ 29} We do not agree with defendants' argument that they were "not required or even allowed to revisit" the issue of the security deposit at the August 27, 2003 hearing because of the "limited amount of time allocated for the damages trial," and because the trial court already resolved this issue. (See defendants' brief, at 13.) When the trial court overruled plaintiff's motion to strike defendants' counterclaim regarding the security deposit, it did not "rule that there was an assignment of the entire security deposit" to defendants. Also, the issue of the security deposit necessarily related to the damages issue that was before the trial court. Moreover, the trial court, prior to closing arguments, stated: "Anything further to be brought to the attention of the Court?" (Tr. 163.) Considering the foregoing, we conclude that the trial court had not resolved the issue of the security deposit prior to the August 27, 2003 hearing, and that defendants were provided the opportunity to present evidence relating to the security deposit at that hearing.
 {¶ 30} Accordingly, we sustain plaintiff's third assignment of error to the extent that the trial court erred when it awarded more than one-third of the security deposit to defendants.
 {¶ 31} Plaintiff's fourth assignment of error asserts that the trial court erred when it did not admit into evidence an informational flyer regarding subleases that was distributed to students by the Student Housing Legal Clinic at The Ohio State University ("the Legal Clinic"). (Plaintiff's Exhibit Q.) Plaintiff asserts that the flyer advised students to seek security deposits from potential subtenants. Plaintiff argues that the flyer "demonstrates that Appellant's policy of requiring a security deposit from subtenants was a prudent and reasonable practice. The [flyer] should have been admitted for this purpose." (Plaintiff's brief, at 24.)
 {¶ 32} Evid.R. 401 provides: "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 provides that "[e]vidence which is not relevant is not admissible."
 {¶ 33} We disagree with plaintiff's assertion that the flyer was relevant to the issues before the trial court. Information on a flyer that is distributed by the Legal Clinic, which advises tenants (potential sublessors) to seek a security deposit from potential subtenants (potential sublessees), is not relevant to whether plaintiff, as a landlord (lessor), was reasonable in his practices and policies regarding security deposits, or otherwise reasonable in his efforts to mitigate damages. Moreover, the trial court correctly determined that the flyer had nothing to do with the lease agreement in this case. (Tr. 158.) Therefore, we conclude that the trial court did not err when it did not admit the Legal Clinic's informational flyer regarding subleases. Accordingly, plaintiff's fourth assignment of error is overruled.
 {¶ 34} By their sole assignment of error on cross-appeal, defendants assert that the trial court erred, as a matter of law, when it did not award defendants twice the amount of the security deposit and reasonable attorneys fees, pursuant to R.C.5321.16(C). For the reasons stated in our discussion of plaintiff's third assignment of error, we overrule defendants' sole assignment of error. Defendants, as guarantors, and not "tenants" under the lease, did not have a claim under R.C.5321.16(C) for twice the amount of the security deposit assigned to them, or for reasonable attorneys fees. Accordingly, defendants' sole assignment of error is overruled.
 {¶ 35} For the foregoing reasons, we overrule plaintiff's first, second, and fourth assignments of error, as well as defendants' sole assignment of error, and sustain plaintiff's third assignment of error to the extent discussed above.
 {¶ 36} Considering our resolution of plaintiff's third assignment of error, we modify the amount of damages awarded to defendants from $1,120 to $375. Accordingly, the judgment of the Franklin County Municipal Court is affirmed as modified.
Judgment affirmed as modified.
Bryant and Sadler, JJ., concur.
[1] This principle assumes the absence of a valid provision to the contrary in the lease agreement.