[Cite as *Tillimon v. Myles*, 2018-Ohio-434.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Duane J. Tillimon                                    Court of Appeals No. L-17-1032

     Appellant                                     Trial Court No. CVG-16-11128

v.

Lyn J. Myles and Eddie J. Bailey          **DECISION AND JUDGMENT**

     Appellees                                    Decided:  February 2, 2018

* * * * *

Duane J. Tillimon, pro se.

* * * * *

**MAYLE, P.J.**

**{¶ 1}** Following a bench trial, plaintiff-appellant, Duane J. Tillimon, appeals the January 13, 2017 judgment of the Toledo Municipal Court.  Defendants-appellees, Lyn Myles and Eddie Bailey, did not file briefs.  For the reasons that follow, we affirm, in part, and reverse, in part.

## I. Background

{¶ 2} Plaintiff-appellant, Duane J. Tillimon, owns property located at 3802 House of Stuart Avenue, Toledo, Ohio, which he leased to Lyn J. Myles and Eddie J. Bailey ("appellees") pursuant to a written residential rental agreement. The term of the lease was November 1, 2015, to October 31, 2017, however, Tillimon alleged that Myles and Bailey defaulted on rent payments beginning June 1, 2016. On August 1, 2016, he filed a landlord's complaint for forcible entry and detainer, and he sought money damages for unpaid rent and utilities and damage to the property.

{¶ 3} The case was tried to the court on January 3, 2017. Tillimon requested judgment in the amount of $5,030 for past-due rent; $888.37 for unpaid water bills; $196.57 for an unpaid gas bill; and $6,880.56 for miscellaneous damages to the home. In an order journalized on January 13, 2017, the trial court awarded Tillimon only $1,180 for past due rent and $196.57 for the unpaid gas bill.

{¶ 4} Tillimon timely appealed the trial court judgment. He requested that the court reporter prepare a trial transcript, but the court reporter indicated that the contents of the stenographic record could not be retrieved due to a software malfunction. Because the trial transcript could not be obtained, Tillimon filed a statement of evidence under App.R. 9(C). He served the statement of evidence on appellees, and appellees filed no objections and proposed no amendments. He also filed the statement of the evidence in the trial court, but he did not seek the trial court's "settlement and approval" of the statement as required by App.R. 9(C). We, therefore, granted him 30 days by which to

2.

obtain the trial court's approval of his statement of evidence, or, alternatively, for the trial court to "delete, add or otherwise modify" the statement so that it is accurate and conforms to the truth.

{¶ 5} The trial court approved the statement of evidence on December 11, 2017, and the docket entry reflecting its approval was journalized on December 21, 2017.  It was finally forwarded to this court on January 3, 2018.  We are now able to consider the merits of Tillimon's appeal.  He assigns the following errors for our review:

> ASSIGNMENT OF ERROR NO. 1
>
> THE TRIAL COURT COMMITTED REVERSABLE [sic] ERROR, AND ABUSED ITS DISCRETION, BY DENYING THE APPELLANT THE FULL AMOUNT OF RENTAL LOSS DURING THE TERM OF THE RENTAL AGREEMENT SUCH DENIAL BEING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]
>
> ASSIGNMENT OF ERROR NO. 2
>
> THE TRIAL COURT COMMITTED REVERSABLE [sic] ERROR, AND ABUSED ITS DISCRETION, BY DENYING APPELLANT REIMBURSEMENT FOR WATER, SEWER AND GARBAGE REMOVAL BILLS HE PAID THAT WERE THE RESPONSIBILITY OF APPELLEES TO PAY SUCH DENIAL BEING AGAINST THE MANIFESR [sic] WEIGHT OF THE EVIDENCEDECISION [sic] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

3.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT COMMITTED REVERSABLE [sic] ERROR, AND ABUSED ITS DISCRETION, BY DENYING APPELLANT WHAT THE [sic] REFERRED TO AS "MISCELLANEOUS DAMAGES" TOTALLING [sic] $6,164.53 THAT THE APPELLANT PROVED EXISTED AT THE TIME OF MOVE-OUT OF THE PREMISES BY APPELLEES, MOST DAMAGES NOT DISPUTED BY APPELLEES, SUCH DENIAL BEING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT COMMITTED REVERSABLE [sic] ERROR, AND ABUSED ITS DISCRETION, BY ALLOWING THE APPELLEES TO TESTIFY REGARDING RENT, UTILITY EXPENSES AND PRE-EXISTING CONDITIONS AFTER APPELLEES FAILED TO COMPLY WITH THE COURT'S DISCOVERY ORDER REGARDING RENT, UTILITY EXPENSES and PRE-EXISTING CONDITIONS[.]

ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT COMMITTED REVERSABLE [sic] ERROR, AND ABUSED ITS DISCRETION, BY ALLOWING THE APPELLEES TO INTRODUCE EVIDENCE AFTER APPELLEES RESTED THEIR CASE, A DOCUMENT NEVER TESTIFIED ABOUT AT TRIAL AND

THAT THE COURT DID NOT ALLOW APPELLANT TO LOOK AT

OR TESTIFY ABOUT[.]

## II. Law and Analysis

{¶ 6} Tillimon sought damages at trial of $12,279.47 stemming from appellees' breach of the residential rental agreement; the trial court awarded him only $1,376.57. In his first assignment of error, Tillimon challenges the amount awarded to him for unpaid rent. In his second assignment of error, he challenges the trial court's denial of his request for damages for unpaid utilities. In his third assignment of error, he challenges the trial court's denial of his request for miscellaneous damages for expenses incurred in repairing damage to the property allegedly caused by appellees. And in his fourth and fifth assignments of error, he challenges the trial court's decision to admit certain testimony and evidence. We consider each of Tillimon's assignments of error.

## A. Damages for unpaid rent

{¶ 7} Tillimon sought a total award of $5,030 for damages for unpaid rent. The trial court awarded him $2,250 for June, July, and August 2016 rent, which it offset with appellees' $750 security deposit and with a $320 partial payment remitted on July 8, 2016. This left Tillimon with a total award of $1,180 for unpaid rent. In his first assignment of error, Tillimon claims that the trial court erred in denying him the full amount he requested.

{¶ 8} Under the parties' rental agreement, appellees agreed to pay rent of $750 per month for the period of November 1, 2015, to October 21, 2017. According to his

5.

statement of evidence, Tillimon testified that appellees' May 2016 rent was deficient by $100. He testified that appellees made a partial rent payment of $320 on July 8, 2016. Other than that, no rent was received for June, July, or August of 2016. Appellees vacated the property on August 29, 2016. It remained vacant until January 1, 2017, when Tillimon entered into a residential rent agreement with a new tenant. Tillimon insists that he is entitled to rent for the period of June 1, 2016, through December 31, 2016, plus $100 for the May 2016 deficiency.

{¶ 9} The rental agreement provides that "[i]f the Tenant vacates the premises prior to the termination date or the anniversary date, the Tenant shall remain liable for rent * * * until the premises is re-rented, or can be re-rented if not left in a re-rentable condition."

{¶ 10} While the terms of the agreement entitle Tillimon to rent payments until the property is re-rented, "[a] landlord has a duty to make reasonable efforts to mitigate damages incurred when a lessee vacates the property before the expiration of the lease term." (Citations omitted.) *Tincher v. Interstate Precision Tool*, 2d Dist. Montgomery No. 19093, 2002-Ohio-3311, ¶ 11. What constitutes "reasonable efforts" is a fact-specific determination made by the trial court. *Beatley v. Schwartz*, 10th Dist. Franklin No. 03AP-911, 2004-Ohio-2945, ¶ 17; *Manor Park Apts., LLC v. Delfosse*, 11th Dist. Lake No. 2006-L-036, 2006-Ohio-6867, ¶ 34. There is no bright-line test for determining reasonableness. *Beatley* at ¶ 17.

6.

**{¶ 11}** We review a trial court's "reasonable efforts" determination under a manifest-weight-of-the-evidence standard. *Id.* In doing so, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create a manifest miscarriage of justice. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶ 12}** The trial court issued a written decision in this case, but it denied Tillimon's claim for rent for September 2016, through December 2016, without explanation. Appellees failed to file a brief in this matter, thus "we may accept appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably sustains such action." *Applecrest Village v. Yaple*, 7th Dist. Mahoning No. 01-CA-185, 2003-Ohio-695, ¶ 4, citing App.R. 18(C).

**{¶ 13}** Tillimon presented evidence of his efforts to mitigate damages. According to his trial exhibits and statement of evidence, he advertised the property on Craigslist—the same method he used to advertise the property when he rented it to appellees. He also placed a "for rent" sign in the yard and distributed flyers at neighborhood businesses. Tillimon testified that "once school commences three quarters of the rental market goes away," and "it is nearly impossible to rent a house during the Halloween, Thanksgiving, Christmas and New Years Holidays." After that, he explained, "the market is dependent on weather conditions." Tillimon contends that before appellees vacated the property, he

7.

found a potential new tenant named Teresa, but appellees refused to allow the house to be shown.

**{¶ 14}** Myles appeared for trial, but Bailey did not. Tillimon represents in his approved statement of evidence that Myles did not deny owing him $100 for May 2016 rent. According to Tillimon, Myles also did not dispute that he tried to re-rent the property, she conceded that she did not allow the house to be shown, and she testified that someone showed up unannounced to see the house and tried to force himself in without her permission.

**{¶ 15}** As we previously recognized, whether a landlord made reasonable efforts to re-rent a property is a fact-specific determination. In *Oldendick v. Crocker*, 2016-Ohio-5621, 70 N.E.3d 1033, ¶ 63 (8th Dist.), the trial court found that the landlord did not fail to mitigate damages where he actively sought to re-rent the apartment using the same advertising strategies that he used before leasing the apartment to his former tenants. In *Kanistros v. Holeman*, 2d Dist. Montgomery No. 20528, 2005-Ohio-660, ¶ 37, the trial court found reasonable efforts to mitigate where the landlord testified that she put out a "for rent" sign the day after she learned of the tenant's intent to vacate, and, in her experience as a landlord, "any other efforts to advertise would be unavailing during the holiday season." And in *Gerber v. Lewis*, 8th Dist. Cuyahoga No. 70955, 1996 Ohio App. LEXIS 5633, *7-8 (Dec. 12, 1996), the court accepted the landlord's uncontradicted testimony that "it would not be feasible or practical to attempt to re-rent the property

8.

during the month of November, the implication being that no one would be looking for a home during the middle of the school year."

{¶ 16} Here, the uncontradicted evidence demonstrates that Tillimon advertised the rental on Craigslist, as he did when he leased the home to appellees, distributed flyers, and displayed a "for rent" sign on the property. While he did not succeed in finding a new tenant until January 1, 2017, we nonetheless find that he made reasonable efforts to re-rent the home.

{¶ 17} We, therefore, find that it was against the manifest weight of the evidence for the trial court to deny Tillimon's claim for unpaid rent for the period of September 1, 2016, through December 31, 2016. Accordingly, Tillimon is entitled to $5,250 for rent for June 1, 2016, to December 31, 2016, plus $100 for the May 2016 deficiency. Subtracting the $320 payment that was made on July 8, 2016, and appellees' $750 security deposit withheld by Tillimon, Tillimon is owed a balance of $4,280.

{¶ 18} We find Tillimon's first assignment of error well-taken.

### B. Reimbursement for water, sewer and garbage removal bills

{¶ 19} In addition to rent, the rental agreement required appellees to pay the cost of utilities incurred "prior to the termination date * * * until the premises is re-rented." Tillimon sought damages of $888.37 for those utility expenses, which included water, sewer, and garbage removal. The trial court indicated that it was unable to determine what appellees owed for utilities, and, therefore, awarded nothing to Tillimon. In his second assignment of error, Tillimon claims that this was error.

9.

**{¶ 20}** Tillimon provided a breakdown of the amounts he paid to the city of Toledo for water, garbage, and sewer charges: (1) $155, remitted on September 2, 2016, as a down payment on an installment plan; (2) $685.55, remitted on November 22, 2016, to satisfy unpaid bills accrued; (3) $137.37 for service from September 1, 2016, to December 1, 2016; and (4) $47.32 prorated for service from December 1, 2016, to December 31, 2016. He calculated that his former tenant owes $109.87 of this amount, and appellees owe the remainder—$888.37.

**{¶ 21}** There are a number of problems with Tillimon's claim for utilities. First, the math is off. When the amounts paid by Tillimon are added together, and the amount owed by his prior tenant is subtracted, the total is $915.37—not $888.37.

**{¶ 22}** Second, Tillimon did not submit all of the utility statements for the period of appellees' tenancy. The following statements appear in the record and reflect the previous balance, payments made, current charges, and total amount due for those periods:

| Period of service | Previous balance | Payments | Total current charges | Total amount due |
|---|---|---|---|---|
| 9/2/2015 to 12/4/2015 | $446.91 | -$90.00 | $165.45 | $522.36 |
| 3/4/2016 to 6/3/2016 | $738.13 | -$252.00 | $220.58 | $706.71 |
| 6/4/2016 to 9/1/2016 | $706.71 | -$706.71 | $186.49 | $186.49 |
| 9/2/2016 to 12/1/2016 | $186.49 | -$186.49 | $137.37 | $137.37 |

Absent from the record are the bill for December 5, 2015, to March 3, 2016, and the bill that would include usage for December 2, 2016, to December 31, 2016.

10.

{¶ 23} Third, appellees did not move into the home until November 1, 2015, thus the bill for September 2, 2015, to December 4, 2015, includes charges for utilities consumed by Tillimon's former tenant. There is nothing in the record from which we can ascertain what amount is fairly attributable to each tenant.

{¶ 24} Finally, it is not entirely clear who made the payments credited to the account. Tillimon contends that the former tenant paid $252 toward the bill on April 26, 2016, and $100 on August 8, 2016, and still owes $109.87. Myles claimed at trial that she made a $100 payment toward the utilities bill by adding it to her $750 rent payment. She provided a copy of a money order receipt dated April 6, 2016, showing a payment of $850 for "Rent H2O." But Tillimon provided evidence that he refunded $100 to Myles via a check dated March 8, 2016, for "overpayment refund," and that Myles cashed this check on April 15, 2016. It is not clear why Tillimon's check pre-dates Myles' April 6, 2016 money order.

{¶ 25} Because the trial court could not determine how much appellees actually owed and how much each tenant paid, it awarded nothing to Tillimon. We agree with Tillimon that the trial court's decision is against the manifest weight of the evidence. However, we find that the evidence in the record does not support an award of $888.37, as requested by Tillimon. Rather, the evidence in the record demonstrates that appellees are responsible for the amounts owed for March 4, 2016, to June 3, 2016 ($220.58), June 4, 2016, through September 1, 2016 ($186.49), and September 2, 2016, through December 1, 2016 ($137.37). These bills total $544.44. Given appellees' failure to file a

11.

brief and the trial court's approval of Tillimon's statement of evidence, we will accept as true Tillimon's contention that he refunded any overpayments Myles included with her rent checks. But we decline to impose utility expenses for months where no statements were submitted or for months where appellees' usage cannot reliably be separated from prior tenants' usage.

{¶ 26} We find Tillimon's second assignment of error well-taken.

### C. "Miscellaneous damages"

{¶ 27} Tillimon sought damages of $6,880.56 for painting, floor coverings, lawn care, and numerous other repairs which he claims were necessitated by appellees' damage to the property.[1] The trial court declined to award damages for these expenses because "the actual damages are difficult to ascertain due to Plaintiff not inspecting the home before Defendant took possession." The court further noted that Tillimon did not provide sufficient evidence that appellees were actually responsible for causing the damages. In his third assignment of error, Tillimon claims that the trial court erred in denying his request for these miscellaneous damages.

{¶ 28} According to the trial court's judgment entry, Tillimon did not do a walk-through of the home after the previous tenant moved out, he met with appellees at a McDonald's to sign the lease, Myles presented testimony that the home was not in good

---

[1] The trial court judgment indicates that Tillimon requested $6,164.53. The basis for this amount is unclear. Tillimon's conclusion in his merit brief references a figure of $6,080.56. This may have been a typographical error, but again, this is not clear.

condition when she moved in, and Myles testified that she provided Tillimon with a list of necessary repairs upon move-in. Myles introduced testimony from her mother as to the poor condition of the home, and she presented photographs showing the home's condition. Tillimon insists that Myles' mother was unable to say who took the photographs or when they were taken. He also denies ever receiving a list of necessary repairs from appellees.

{¶ 29} The Rental Agreement obligated appellees to inspect the property before taking possession "and to notify the Landlord in writing within three days after the Commencement Date of this Rental Agreement of any existing damage to the property that the tenant does not want to be held liable for at the time of the move-out inspection." It provides that "[t]he tenant shall be responsible for any damages to the property caused by the Tenants or their invited or uninvited guests," and that "[t]he Tenant agrees to perform all routine maintenance," including lawn care, snow removal, and maintaining the landscaping. "The Tenant agrees to return the dwelling and yard to the Landlord in the same condition it was in at the time of occupancy by the Tenant excepting for normal wear." The agreement encourages the tenant "to arrange with the Landlord for a move-out inspection [so] the Landlord can prepare a list of cleaning and repairs beyond normal wear that need to be performed."

{¶ 30} Both the rental agreement and the common law require a tenant "to return the leased premises in substantially as good a condition as when received, reasonable wear and tear excepted." (Citations omitted.) *Bibler v. Nash*, 3d Dist. Hancock No.

13.

5-05-09, 2005-Ohio-5036, ¶ 18. A tenant may be held liable for extraordinary damages which are not the result of normal wear and tear, but the landlord must establish the link between the damage and the tenants. *Id.;* R.C. 5321.05; *Kelley v. Johnston*, 4th Dist. Gallia No. 01CA5, 2001 Ohio App. LEXIS 5177, *8 (Nov. 14, 2001). "It is axiomatic that in order to determine the reasonable cost to restore property to the condition it was in prior to being damaged, a court must have evidence of the condition of the property before it was damaged." *PAG Holdings v. Love*, 2d Dist. Greene No. 12CA0012, 2012-Ohio-3388, ¶ 11.

{¶ 31} Here, Myles claimed that the house was in poor condition when she moved in, Tillimon failed to inspect the property before Myles took possession of it, and Myles insisted that she left the property in the same condition that she found it. We, therefore, find no error in the trial court's conclusion that Tillimon failed to provide sufficient evidence that appellees were responsible for the damage. We do find, however, that Tillimon paid $75 for lawn mowing services for which he provided invoices. The rental agreement obligated appellees to pay the cost of maintaining the yard in the event of early termination of the lease up until the time the premises could be re-rented.

{¶ 32} We, therefore, find Tillimon's third assignment of error well-taken to the extent that Tillimon is owed $75 for expenses incurred to mow the lawn.

14.

**D. Admission of appellee's testimony regarding rent, utility expenses and pre-existing conditions**

{¶ 33} The trial court issued a judgment journalized on November 17, 2016, granting Tillimon's motion to compel discovery of documents evidencing rent payments, utility payments, and pre-existing damage to the property, and providing that appellees "will not be permitted to enter this information into evidence" if not produced by November 28, 2016. In his fourth assignment of error, Tillimon claims that the trial court erred by allowing appellees to testify about these topics because they failed to comply with the court's discovery order.

{¶ 34} "A trial court has broad discretion when imposing discovery sanctions. A reviewing court shall review these rulings only for an abuse of discretion." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1, syllabus. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 35} Here, we find no abuse of discretion in allowing appellees to testify regarding "rent, utility expenses, and pre-existing conditions." For one, we read the trial court's order to mean that it would not allow appellees to introduce *documents* showing proof of rent, utility payments, and the condition of the property if not produced to Tillimon—not that appellees could not *testify* about these matters. Second, it was within the trial court's discretion to reconsider its prior decision. *Zions First Natl. Bank v. Shiva*

15.

*Hosp., Inc.*, 3d Dist. Wyandot No. 16-12-12, 2013-Ohio-5666, ¶ 20. And most importantly, we have found Tillimon's first three assignments of error well-taken. To the extent that he has not been awarded the full amount of damages he requested, it is because *he* failed to submit sufficient evidence to support those damages—not because the exhibits offered by Myles contradicted his damages claims.

{¶ 36} Accordingly, we find Tillimon's fourth assignment of error not well-taken.

### E.  Allowing appellees to introduce evidence after resting their case

{¶ 37} In his fifth assignment of error, Tillimon claims that the trial court erred by allowing appellees to introduce evidence after resting their case, and by allowing admission into evidence of a document (Exhibit J—a water bill) that was never testified about at trial and that he was not allowed to review or explain.

{¶ 38} "[I]t is within the discretion of the trial court to permit or deny the presentation of evidence that is part of a party's case in chief after that party has rested." *Obenour v. Bower*, 6th Dist. Lucas No. L-93-319, 1994 Ohio App. LEXIS 3606, *4 (Aug. 19, 1994). Moreover, "[t]he admission or exclusion of evidence is within the trial court's discretion and will not be reversed absent an abuse of discretion." *State v. Burkholder*, 6th Dist. Lucas No. L-11-1216, 2013-Ohio-1589, ¶ 14, citing *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987).

{¶ 39} It was the prerogative of the trial court whether to hear additional evidence from Myles after she rested her case. As for the exhibit that Tillimon complains he was not permitted to review, a letter written by Tillimon and offered into evidence by Myles

16.

as Exhibit I, specifically references the document.  It is clear, therefore, that he had seen it before.  We find no abuse of discretion here.

{¶ 40} We find Tillimon's fifth assignment of error not well-taken.

### III.  Conclusion

{¶ 41} We find that the trial court erred in failing to award Tillimon damages for unpaid rent for September 2016, through December 2016.  We also find that the trial court erred in awarding no amount for utility payments and for costs incurred in maintaining the lawn following appellees' breach of the rental agreement.  We find no abuse of discretion in the trial court's decision to admit testimony and evidence at trial.

{¶ 42} We affirm, in part, and reverse, in part, the January 13, 2017 judgment of the Toledo Municipal Court.  Tillimon is awarded $4,280 for unpaid rent, $544.44 for utilities, sewer, and garbage, and $75 for lawn service, for a total award of $4,899.44.  Appellees are ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                               _____

                                                                         JUDGE

Arlene Singer, J.

                                   _____

Christine E. Mayle, P.J.                                JUDGE
CONCUR.

                                   _____

                                                                          JUDGE

18.